**INDIANA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT and Lori Kaplan, in her official capacity as Commissioner of the Indiana Department of Environmental Management, Appellants–Respondents,**

v.

**SCHNIPPEL CONSTRUCTION, INC., and Tower Senior Apartments, LP, Appellees–Petitioners.**

No. 49A04–0203–CV–118.

Court of Appeals of Indiana.

Oct. 28, 2002.

Steve Carter, Attorney General of Indiana, Janet L. Parsanko, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellants.

Lewis D. Beckwith, Sharon A. Hilmes, Baker & Daniels, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-plaintiff Indiana Department of Environmental Management (IDEM) appeals the order of the trial court reversing and remanding a Final Order from the Chief Environmental Law Judge (CELJ) granting IDEM's motion for partial summary judgment and assessing civil penalties against Schnippel Construction, Inc. (Schnippel), and Tower Senior Apartments, LP (Tower) (collectively, the respondents). IDEM also appeals the trial court's order taxing costs of enforcement against the State of Indiana (the State). IDEM argues that the trial court substituted its judgment for that of the administrative agency when it reversed the Final Order granting IDEM's motion for partial summary judgment because uncontradicted evidence showed that violations of asbestos regulations occurred. IDEM also contends that the trial court substituted its judgment for that of the administrative agency when it reversed the Final Order imposing civil penalties against the respondents because the administrative law judge's (ALJ) calculation of penalties was not arbitrary and capricious. Finally, IDEM asserts that the trial court erred in taxing the costs of this action against the State because the State is not a party to this action and because imposition of such costs is contrary to law. Concluding that the trial court substituted its judgment for that of the administrative agency when it reversed the CELJ's Final Order and that the trial court erred by taxing the costs of this action against the State, we reverse.

## FACTS

The facts most favorable to the judgment reveal that Tower owns an apart-

ment building in Anderson, Indiana (the site). In early 1997, Tower contracted with Schnippel to act as general contractor for the rehabilitation of the site. A complete renovation of the site's interior was planned.

In late October 1997, Schnippel contracted with Specialty Systems, Inc. (SSI) and Air Management Techniques, Inc. (AMT) to conduct asbestos inspections of the site. SSI's inspector, however, was not certified to conduct such inspections. Each company noted that asbestos was present in the building, but their employees looked only in places such as pipe chases, access doors, and opened vents, which were easily accessible.

On November 4, 1997, Schnippel submitted a Notification of Demolition and Renovation Operations form to IDEM. The form stated that no regulated asbestos containing material (RACM) was to be removed from the site and that only demolition work and removal of ceilings, walls, and structures from the interior of the building was to occur. Shortly thereafter, Dirt Brothers, a subcontractor hired to perform the demolition and removal work, commenced operations at the site.

On November 20, 1997, investigators from IDEM and the Anderson Office of Air Management (AOAM) inspected the site. On the third floor, they found Dirt Brothers workers cutting pipes and removing walls and ceilings. Material that appeared to be RACM had fallen off the pipes and onto the floor. The inspectors measured the amount of disturbed RACM by pacing off their footsteps alongside the material. The inspectors also found twelve trash bags full of what they suspected was RACM. A sample taken from one of the trash bags and another taken from beside an outdoor dumpster contained asbestos.

IDEM and AOAM immediately ordered Dirt Brothers to stop all work. AOAM notified Tower and Schnippel of possible asbestos regulation violations and advised them to contact a certified asbestos abatement contractor to conduct an emergency cleanup. Schnippel hired SSI to perform the cleanup, and SSI submitted a second Notification of Demolition and Renovation Operations form to IDEM. This form reported that 3,836 linear feet of RACM was to be removed from the site and noted that a "[d]emo contractor [had] contaminated the building during interior demolition." AR. p. 903.

After the emergency asbestos removal, Schnippel resumed renovation activities at the site. On December 15, 1997, IDEM and AOAM inspectors again visited the site. The inspectors saw that pipes had been disturbed on the eighth through the tenth floors. On the ninth and tenth floors, trash bags containing material that appeared to be RACM were present. A sample from a tenth floor bag tested positive for asbestos. The inspectors determined that fifty linear feet of RACM had been disturbed on floors eight through twelve.

On January 13, 1998, IDEM informed Schnippel that its November 4, 1997, demolition notice failed to meet the requirements of section 14–10 of title 326 of the Indiana Administrative Code, as that notice had stated that no asbestos would be disturbed. On March 11, 1998, IDEM sent one notice of violation to Schnippel and Tower and another to Dirt Brothers and Tower. These notices offered an opportunity to enter into an agreed order providing for corrective actions, but the respondents made no reply.

On October 1, 1998, IDEM issued a Notice and Order of the Commissioner, alleging that Schnippel, Tower, and Dirt Brothers had committed the following vio-

lations: (1) failure to conduct a thorough inspection,[1] (2) failure to provide IDEM with written notification of the intention to disturb asbestos during renovation,[2] (3) failure to remove all RACM before renovation activities began,[3] (4) failure to wet RACM during and after removal from facility components,[4] (5) failure to post warning signs and secure RACM at the renovation site,[5] and (6) illegally engaging in an asbestos removal project by hiring a contractor not properly licensed or accredited to remove asbestos.[6] IDEM alleged that the asbestos regulations violated by the respondents applied because more than 260 linear feet of asbestos had been disturbed.[7] IDEM assessed civil penalties of $110,000 against the respondents for the November 20 and December 15, 1997, violations.

On October 22, 1998, Schnippel and Tower requested administrative review of the Notice and Order, and an ALJ was assigned to the respondents' case. On September 10, 1999, IDEM moved for partial summary judgment regarding responsibility for the violations of asbestos regulations. On January 4, 2000, the ALJ issued a Recommended Order granting IDEM's motion for partial summary judgment as to responsibility for all violations because she found that no genuine issue of material fact existed as to whether the threshold amount of asbestos had been disturbed.

On March 15, 2000, the ALJ held a hearing regarding the assessment of civil penalties. The respondents alleged that the penalty should be $27,312, and IDEM argued that the penalties levied were with-

in the amount allowed by statute. At the hearing, the IDEM officer who assessed the penalties against the respondents testified that she calculated the penalties using IDEM's penalty matrix, but she stated that superiors had told her to always use the highest Base Penalty from the matrix. AR. p. 659.

The ALJ held that IDEM improperly computed the penalties against the respondents because an unwritten policy existed that the greatest possible Base Penalty was to be the starting point for computing any penalty. AR. p. 171. The ALJ reduced the penalties to $82,500 by using the IDEM matrix.

The respondents objected to the ALJ's Recommended Order on July 11, 2000. The respondents opposed the grant of partial summary judgment in favor of IDEM on grounds that IDEM had not demonstrated that the threshold amount of RACM required for asbestos regulations to apply was present at the site. The respondents objected to the ALJ's calculation of civil penalties on grounds that the ALJ failed to consider their "lack of culpability" because Dirt Brothers—an independent contractor—committed the violations at issue. On August 8, 2000, the CELJ issued a Final Order affirming the ALJ's Recommended Order in all respects.

The respondents filed a petition for judicial review of the CELJ's Final Order. They objected to both the grant of partial summary judgment in favor of IDEM and to the imposition of civil penalties. As before, their challenge with respect to the grant of partial summary judgment in fa-

---

1. 326 IAC 14–10–1(a).

2. 326 IAC 14–10–3(1).

3. 326 IAC 14–10–4(1).

4. 326 IAC 14–10–4(1)(C).

5. 326 IAC 14–14–4.

6. 326 IAC 18–1–3 (formerly 18–3–3).

7. 326 IAC 14–10–1(c)(1) and (d)(1).

vor of IDEM rested on the argument that IDEM had not demonstrated that the threshold amount of RACM required for asbestos regulations to apply was present at the site. Oral argument was held before the trial court on October 17, 2001. On January 11, 2002, the trial court reversed the CELJ's Final Order and remanded the liability issue to IDEM for an evidentiary hearing. The trial court also vacated the Final Order with respect to civil penalties and taxed the costs of the action against the State. IDEM now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

We first note that when a court reviews a decision from an administrative agency, the reviewing court may neither try the case de novo nor substitute its judgment for that of the agency. Ind. Code § 4–21.5–5–11. The reviewing court is to give deference to the expertise of the agency. *State v. C.M.B. III Enter., Inc.*, 734 N.E.2d 653, 658 (Ind.Ct.App.2000). The court should not reverse the agency's action unless the action is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(4) without observance of procedure required by law; or

(5) unsupported by substantial evidence.

I.C. § 4–21.5–5–14(d).

A decision is arbitrary and capricious when it is made without any consideration of the facts and lacks any basis that may lead a reasonable person to make

the same decision made by the administrative agency. *Roberts v. County of Allen*, 773 N.E.2d 850, 853 (Ind.Ct.App.2002).

### II. Summary Judgment

IDEM first argues that the trial court substituted its judgment for that of the administrative agency. Specifically, IDEM claims that the trial court improperly reversed the Final Order granting IDEM's motion for partial summary judgment because uncontradicted evidence showed that violations of asbestos regulations occurred.

Summary judgment may be granted in favor of either party in an administrative adjudication. I.C. § 4–21.5–3–23(a). Summary judgment is appropriate where "a genuine issue as to any material fact does not exist and the moving party is entitled to a judgment as a matter of law." I.C. § 4–21.5–3–23(b). This court has held that "a genuine issue of material fact exists where facts concerning an issue which would dispose of litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Briggs v. Finley*, 631 N.E.2d 959, 963 (Ind.Ct.App.1994). The burden of establishing the propriety for summary judgment lies with the movant. *Pfifer v. Town of Edinburgh*, 684 N.E.2d 578, 581 (Ind.Ct.App.1997). If the moving party proves that no genuine issues of material fact exits, "the burden shifts to the nonmovant to file affidavits or other materials showing the existence of a genuine issue" of material fact. *Briggs*, 631 N.E.2d at 963. Additionally, a court reviewing the grant or denial of summary judgment may look only to the "evidentiary matter designated to the trial court." *Aide v. Chrysler Fin. Corp.*, 699 N.E.2d 1177, 1180 (Ind.Ct. App.1998).

■ The notification[8] and asbestos removal[9] regulations at issue apply only if a threshold amount of asbestos is disturbed. Section 14–10–1 of title 326 of the Indiana Administrative Code, which sets the threshold amounts that trigger the regulations, states in relevant part:

. . .

All the notification requirements of section 3 of this rule apply if the combined amount of RACM to be stripped, removed, dislodged, cut, drilled, or similarly disturbed is any one (1) of the following: (A) At least two hundred sixty (260) linear feet on or off pipes

. . .

All the emission control requirements of section 4 of this rule apply if the combined amount of RACM to be stripped, removed, dislodged, cut, drilled, or similarly disturbed is any one (1) of the following: (A) At least three (3) linear feet on or off pipes.

. . .

As evidence supporting its motion for partial summary judgment, IDEM attached the affidavit of Gary McKinney, the employee for AOAM that conducted the November 20, 1997, inspection. A.R. p. 109–11. McKinney averred that on November 20, 1997, he "observed that 600 feet of insulated pipe had been removed or stripped." A.R. p. 109. This evidence, argued IDEM, established that the 260 linear feet threshold had been crossed.

In opposing IDEM's motion for partial summary judgment, the respondents designated the deposition testimony of Daniel Lamberson, a senior manager with IDEM, who testified that the 600 linear feet had been "paced off." A.R. p. 560. The respondents' argument focused on the fact that the inspectors "paced off their foot-

steps alongside the alleged RACM and alleged that this method was insufficiently exact."

The ALJ noted in her Recommended Order that the "statute and regulations do not proscribe a certain method for determining linear feet. Pacing-off and eyeballing the amounts of suspected RACM is just as acceptable a method as pulling out a tape measure." AR. p. 269. Thus, contrary to the respondents' claims, the ALJ held that more exact measurement procedures were unnecessary. Even more convincing, the ALJ found, "the amount of disturbed asbestos greatly exceeded the threshold level." AR. p. 269.

The trial court, reversing the ALJ's findings, held that the defendants' designated evidence raised a genuine issue of material fact. Specifically, the trial court found that questions remained about the amount of RACM present at the site. Appellant's App. p. 269.

Contrary to the trial court's holding, the evidence designated by the respondents to oppose IDEM's motion for partial summary judgment does not contradict McKinney's affidavit. In fact, Lamberson's deposition shows that *he himself* also paced off the 600 linear feet. A.R. p. 560. Nowhere in Lamberson's deposition does he deny that 600 linear feet of removed or disturbed material was present. No evidence was offered by the respondents to show that the amount of disturbed asbestos was less than 260 linear feet.

This court has held that "we give deference to the expertise of the administrative body and will not reverse its discretionary decisions without a showing that the decision was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law." *Roberts*, 773 N.E.2d

8. 326 IAC 14–10–3(1).

9. 326 IAC 14–10–4(1).

at 853. In this case, however, the trial court ignored the agency's holding that "pacing-off and eye-balling the amounts of suspected RACM is just as acceptable a method as pulling out a tape measure." A.R. p. 269. To the layman, "pacing off" asbestos may seem like an imprecise procedure. However, formulating highly technical procedures such as the method for quantifying asbestos are precisely the type of actions we entrust to administrative agencies. *Charles W. Cole & Son, Inc. v. Ind. & Mich. Elec. Co.*, 426 N.E.2d 1349, 1352 (Ind.Ct.App.1981) (holding that deference to agency was warranted because Utility Commission's rate-making function involves technical determinations that are within the Commission's competence and expertise.)

Even more convincing was that the amount of asbestos found by the inspectors. The amount found was more than double the threshold level. A more precise measurement procedure would not have changed the fact that the amount of asbestos present was more than the threshold amount of 260 linear feet.

Because the trial court substituted its judgment for that of the administrative agency, the trial court erred in reversing the Final Order granting IDEM's motion for partial summary judgment.

### III. Waiver of Claims

IDEM contends that the respondents waived judicial review of the parts of the ALJ's Recommended Order that awarded summary judgment in IDEM's favor for violations of regulations requiring a certified asbestos inspector [10] and remover.[11] Specifically, IDEM argues that the asbestos threshold amounts delineated in sections 14–10–1 of title 326 of the Indiana Administrative Code do not apply to the requirement that a building owner retain a

qualified inspector to conduct an inspection and a qualified asbestos removal contractor for the removal of RACM. Since the respondents only attacked the finding that 260 linear feet of RACM was present, IDEM argues, the respondents omitted a challenge to the inspection and removal violations.

### A. Asbestos Removal

At the time of the violations, section 18–3–3 of title 326 of the Indiana Administrative Code required an accredited asbestos remover for asbestos removal at facilities "subject to 326 IAC 14–10." 326 IAC 18–3–3 (repealed May 12, 1998). Thus, section 18–3–3 of title 326 was triggered by the asbestos thresholds of section 14–10 of title 326. It appears, however, that IDEM seeks to apply the regulation that replaced section 18–3–3 of title 326 of the Indiana Administrative Code, section 18–1–4 of title 326. The new section omits the "subject to 326 IAC 14–10" language, thereby making the accreditation of asbestos removers a requirement in all projects, not just those subject to section 14–10 of title 326.

Application of the new regulation would necessarily implicate retroactivity concerns. This court has held that "absent an express indication otherwise, we presume that the legislature intended that the new statutes or amendments be applied prospectively only." *Ind. Dep't of Natural Res. v. United Minerals, Inc.*, 686 N.E.2d 851, 855 (Ind.Ct.App.1997). Administrative agencies' regulations are viewed in the same manner. *Ind. Dep't of Envtl. Mgmt. v. AMAX, Inc.*, 529 N.E.2d 1209, 1212 (Ind.Ct.App.1988) (holding that administrative rulemaking power has a prospective effect). In this case, the violations occurred in November and December

---

**10.** 326 IAC 14–10–1(a).

**11.** 326 IAC 18–3–3(a).

1997. The regulation regarding accreditation of asbestos removers was not altered until May 1998.

The original section 18–3–3 of title 326 should apply in this case because the original regulation—which made certified inspectors and removers required only if a site was subject to section 14–10 of title 326—was in effect at the time of the violations. Section 18–1–4 of title 326 does not mention retroactive application. As a result, we assume that IDEM's regulation is to be given prospective application only. Thus, the respondents' argument regarding the uncertainty of the amount of RACM disturbed applies to this issue and waiver of judicial review did not occur.

Notwithstanding the fact that the respondents did not waive judicial review of this issue, the CELJ's Final Order upheld the ALJ's finding that 600 linear feet of RACM was present at the site. The 260 linear feet of RACM exceeded, the site came under the purview of section 14–10 of title 326. Thus, section 18–3–3 of title 326 was triggered by the asbestos thresholds surpassed by the respondents.

### B. Asbestos Inspection

■ IDEM argues that the respondents waived judicial review of the violation of the regulation requiring that a licensed asbestos inspector inspect a demolition or renovation site.

We first note that Indiana Code section 4–21.5–5–7(b)(5), which governs the contents of a petition for judicial review of an administrative action, requires that the petitioner plead "Specific facts to demonstrate that the petitioner is entitled to obtain judicial review."

Section 14–10–1(a), the rule requiring inspections by licensed asbestos inspectors, reads in relevant part:

> To determine which requirements of this section and sections 3 through 4 of this

rule apply to the owner or operator of a demolition or renovation activity and prior to the commencement of the demolition or renovation, the owner or operator shall use an Indiana licensed asbestos inspector.

■ In construing an administrative rule, we use the same principles employed to construe statutes. *Indianapolis Historic Partners v. State Bd. of Tax Com'rs*, 694 N.E.2d 1224, 1227 (Ind. Tax Ct.1998). We first look to the plain language of the rule and, if unambiguous, give effect to that plain meaning. *Id.*

We observe that section 14–10–1(a) begins with the phrase, "To determine which requirements of this section and sections 3 through 4 of this rule apply." The plain language of the rule indicates the inspection is done for the specific purpose of determining which set of regulations, if any, will govern demolition or renovation of a structure. Thus, the imposition of a threshold level would frustrate the purpose of the section 14–10–1(a) inspection requirement. The inspection requirement applies regardless of whether a threshold of asbestos is exceeded.

In their Verified Petition for Judicial Review, the respondents challenge only the ALJ's conclusion that the threshold of 260 linear feet of RACM was surpassed. Appellants' App. p. 21. No challenge to the allegation that an unlicensed asbestos inspector was used to inspect the site was included. Since the respondents did not present evidence challenging IDEM's charges regarding the unlicensed inspection, the respondents have not pled "specific facts to demonstrate" that judicial review is warranted. Thus, the respondents' challenge to the section 14–10–1(a) inspection violation was waived.

### IV. Civil Penalties

■ IDEM also contends that the trial court substituted its judgment for that of

the administrative agency when it reversed the Final Order imposing civil penalties against the respondents. Specifically, IDEM argues that the ALJ's calculation of penalties was not arbitrary and capricious.

The imposition of civil penalties is, just like other decisions of an administrative agency, reviewed to ensure that the penalties were not assessed in an arbitrary and capricious manner. *Indiana State Ethics Com'n v. Nelson,* 656 N.E.2d 1172, 1175 (Ind.Ct.App.1995). Furthermore, administrative agencies are to receive deference when they impose penalties. *Bird v. County of Allen,* 639 N.E.2d 320, 327–28 (Ind.Ct.App.1994) (holding that reviewing court may not modify a penalty imposed by an administrative body absent a showing that such action was arbitrary and capricious).

In computing civil penalties, IDEM first uses a matrix system with penalty ranges to select the Base Penalty. A.R. p. 926. Greater deviations from asbestos regulations result in greater Base Penalties. A.R. p. 929. Greater potential for harm also produces a greater Base Penalty. A.R. p. 929. The worst possible penalty— $25,000 to $20,000—is reserved for "Major" deviations that have "Major" potential for harm.

After IDEM computes the Base Penalty, adjustments may be made based upon certain findings, such as a history of noncompliance or cooperation. IDEM officials may adjust the Base Penalty upward or downward by up to fifty percent.

In this case, the IDEM officer assessed the respondents $110,000 in civil penalties, but the ALJ adjusted the fines originally leveled against the respondents. AR. p. 174–76. The ALJ re-computed the penalties because after hearing testimony that IDEM officials ordered their employees to always select the greatest possible Base Penalty, she found that IDEM was using an unwritten policy. AR. p. 171. IDEM always used the highest possible Base Penalty in the IDEM penalty matrix. AR. p. 171. The ALJ re-figured the penalties using her independent judgment instead of IDEM's unwritten policy. Depending on factors such as cooperation or repetitive offenses, the ALJ selected either the greater or lesser Base Penalty figure. AR. p. 174–76. The ALJ did not adjust the Base Penalty upward or downward.

The respondents, however, argue that their cooperation and prompt remediation should have decreased the assessed penalties *below* the lesser Base Penalty figures in IDEM's matrix. The respondents contend that the ALJ was required to state why she did not decrease the Base Penalty figures because of their positive action. IDEM's penalty document itself, however, states that "All, some, or none of the adjustment factors" may be used to increase or decrease a penalty. AR. p. 95. Thus, the ALJ was under no obligation to adjust the Base Penalty. Additionally, nowhere does IDEM's penalty document require an IDEM official to explain his reasons for not decreasing a Base Penalty.

The ALJ used the IDEM's penalty matrix in a reasonable manner. No unwritten policies were used in selecting the Base Penalty for each violation. Because the ALJ used a reasonable procedure in assessing the penalties, we cannot say that the penalties "lack[ ] any basis that may lead a reasonable person to make the same decision made by the administrative agency." *Roberts,* 773 N.E.2d at 853. Thus, the trial court erred in vacating the assessment of penalties.

### V. Costs

■ IDEM claims that the trial court abused its discretion in taxing the costs of this action against the State of Indiana. Specifically, IDEM argues that the State

was not a party to this action, and even if it was a party, assessment of costs against the State would be contrary to law.

IDEM is correct that the State of Indiana is not a party to this action. Furthermore, Indiana Code section 33–19–3–1 prohibits costs from being taxed to the State. This statute reads, in relevant part:

> The fees prescribed in civil actions (or paternity actions) may not be collected from the state or a political subdivision in an action brought by or on behalf of the state or any political subdivision.

Our supreme court has held that "In the construction of statutes, specific provisions will prevail over general provisions with relation to the same subject-matter." *State v. Larue's*, 239 Ind. 56, 154 N.E.2d 708, 710 (1958). Thus, even if Indiana Code section 34–52–1–1[12] allows costs to be taxed against a non-prevailing party, Indiana code section 33–19–3–1 applies specifically to the circumstances at issue here, where an action has been brought on behalf of the State. Since Indiana Code section 33–19–3–1 applies specifically to the matter at issue, the trial court erred in taxing costs against the State.

## CONCLUSION

In light of the disposition of the issues set forth above, we conclude that the trial court substituted its judgment in reversing the ALJ's grant of partial summary judgment and assessment of civil penalties against the respondents. We also find that the respondents did not waive their right to challenge the decision of the administrative agency with regard to inspection and removal violations. Finally, we

find that the trial court erroneously taxed the costs of the action against the State.

Reversed.

VAIDIK, J., and BARNES, J., concur.

---

12. Indiana Code section 34–52–1–1 reads, in relevant part: "In all civil actions, the party recovering judgment shall recover costs, ex-cept in those cases in which a different provision is made by law."