**INDIANA–KENTUCKY ELECTRIC CORPORATION, Appellant–Petitioner,**

v.

**COMMISSIONER, INDIANA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, Appellee–Respondent.**

No. 49A02–0406–CV–515.

Court of Appeals of Indiana.

Jan. 19, 2005.

Anthony C. Sullivan, Bryan G. Tabler Loraine L. Seyfried, Barnes & Thornburg. L.L.P, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Indiana–Kentucky Electric Corp. (IKEC) appeals the Office of Environmental Adjudication's (OEA) order granting the Indiana Department of Environmental Management's (IDEM) motion for summary judgment. We reverse and remand.

### Issue

IKEC raises several issues for our review, which we consolidate and restate as: whether the OEA properly granted IDEM's motion for summary judgment.

### Facts and Procedural History

. IKEC owns and operates an electric generating facility, known as Clifty Creek Station ("Clifty Creek"), in Jefferson County, Indiana. As part of the electric generating process, Clifty Creek emits sulfur dioxide into the air. Sulfur dioxide is one of six criteria pollutants regulated under the federal Clean Air Act. *See* 42 U.S.C. 7408; 40 CFR 50.4. As of January 1, 2000, the Clean Air Act limited Clifty Creek's sulfur dioxide emissions to 50,470 tons per year. In 2000, Clifty Creek's total sulfur dioxide emissions were 42,678 tons, and in 2001 they were 39,164 tons.

Clifty Creek is subject to the requirements of Title 326, section 7–3–2 of the Indiana Administrative Code ("the Rule") because it emits greater than ten thousand tons of sulfur dioxide per year. *See* 326 Ind. Admin. Code 7–3–1. The Rule initially provides:

(a) The source owner or operator shall install and operate continuous ambient sulfur dioxide air quality monitors and a meteorological data acquisition sys-

tem according to a monitoring plan submitted to the commissioner for approval. At a minimum, the monitoring plan shall contain the following requirements:

> (1) Installation and operation of one (1) or two (2) air quality monitors and one (1) meteorological instrumentation system capable of measuring wind speed and wind direction at a height of at least ten (10) meters above grade. The monitor shall be located in areas of expected maximum ambient concentration as determined by methods acceptable to the commissioner.

326 IAC 7–3–2(a)(1). However, section 7–3–2(d) of the Rule states that "[a] source owner or operator may petition the commissioner for an administrative waiver of all or some of the requirements of this section if such owner or operator can demonstrate that ambient monitoring is unnecessary to determine continued maintenance of the sulfur dioxide ambient air quality standards in the vicinity of the source."

IKEC previously operated six ambient sulfur dioxide monitors in the vicinity of Clifty Creek. IKEC, pursuant to the waiver provision in the Rule, has obtained a waiver from IDEM for all but one of its ambient sulfur dioxide monitors. IKEC also continues to maintain a meteorological instrumentation system.

On March 7, 2001, IKEC requested a waiver from IDEM for its remaining monitoring responsibilities under the Rule. If granted, this waiver would have allowed IKEC to shut down its sole remaining ambient sulfur dioxide monitor. IDEM denied IKEC's request on May 15, 2001. One of the reasons IDEM gave for denying IKEC's request was because it believed that it was "appropriate to maintain a basic [sulfur dioxide] monitoring network, to assure the public that the National Ambient Air Quality standard for [sulfur dioxide] will continue to be met." Appellant's Appendix at 34.

On May 31, 2001, IKEC filed a petition for administrative review with the OEA of IDEM's denial of its request for a waiver. Both IKEC and IDEM filed motions for summary judgment. Chief Environmental Law Judge Wayne Penrod granted IDEM's motion for summary judgment on August 2, 2002. On that same day, IKEC filed a motion to reconsider and vacate the order granting IDEM's motion for summary judgment, and this motion was granted on August 15, 2002. Before he could rule on the parties' motions for summary judgment, Chief Judge Penrod retired, and Annette Biesecker was named the acting Chief Environmental Law Judge. Judge Biesecker, without conducting an evidentiary hearing, granted IDEM's motion for summary judgment on May 8, 2003. The order granting IDEM's motion for summary judgment provides:

## FINDINGS OF FACT

\* \* \*

4. The only [sulfur dioxide] monitoring station and the only meteorological monitor that IKEC operates at Clifty Creek are the subject monitors.

5. The closest [sulfur dioxide] monitor to the Clifty Creek plant is located approximately 64 kilometers (40 miles) away at the Tanner's Creek facility operated by American Electric Power Service Corporation.

6. IDEM requires ambient monitoring for purposes of 326 IAC 7–3 to be located no more than ten (10) kilometers from the source of the [sulfur dioxide] emissions.

7. There is no way to obtain actual ambient sulfur dioxide data other than

operating ambient sulfur dioxide monitors.

\* \* \*

## CONCLUSIONS OF LAW

\* \* \*

3. Courts and, by extension, administrative adjudicatory agencies, must give considerable deference to an agency's interpretation of the statute it is charged with enforcing. *Peabody Coal Company v. IDNR,* 606 N.E.2d 1306 (Ind.App.1992); *Jones v. Review Bd. of Indiana Employment Sec. Div.* 508 N.E.2d 1322 (Ind.App.1987). (An agency's interpretation of the statute are to be afforded great weight and are not to be disturbed so long as they have a rational basis.)

4. IKEC argues that IDEM has imposed an irrational interpretation on the waiver rule and therefore should be accorded no such deference. IKEC argues that the statute clearly anticipates the possibility that all ambient monitoring stations could be eliminated in a vicinity so that no entity has any ambient monitoring responsibility. Yet IDEM's interpretation fails to allow for the possibility that "all" of a source's ambient [sulfur dioxide] monitors could be eliminated. Because, IKEC argues, IDEM refuses to allow any substitute for actual ambient air monitors as a way to determine continued maintenance, IKEC could never obtain a waiver of **all of** its monitors in the Clifty Creek vicinity because it could never demonstrate that ambient monitoring is unnecessary.

5. The rule is simply not as unambiguous in its language as IKEC believes and the sentence in question is susceptible of multiple interpretations. . . . The IKEC interpretation anticipates that some alternative measuring structure or data source will substitute for ambient monitoring. The IDEM interpretation assumes that ambient monitoring is needed for continuous maintenance but that any individual source may be excused from the duty, provided that some entity performs the function.

6. Although it is unlikely that IKEC will exceed the [sulfur dioxide] limits imposed upon it, and indeed, has listed several safeguards to assure that their own emissions are within the required limits, ambient air monitoring has a broader goal than policing IKEC emissions. It monitors the air quality in the entire vicinity, including sources that are independent of and beyond the control of IKEC. Even if we assume that IKEC's past practice is a perfect indicator of its own future emissions conduct, IKEC cannot predict the future of other [sulfur dioxide] sources. Both parties agree that the only way to monitor actual ambient air quality is through actual monitoring. The rule imposes a duty that monitoring for continuance [sic] maintenance be performed.

7. IDEM's policy for requiring that [sulfur dioxide] monitoring sites be located within 10 kilometers of the emission source is consistent with the EPA rules for ambient [sulfur dioxide] monitoring found in 40 CFR 58, Appendix D.

8. The IDEM interpretation of the rule, which requires that IKEC continue to operate its Clifty Creek monitoring station, in that it is the sole entity that performs this function in the vicinity, is a reasonable one.

9. IDEM has not been arbitrary and capricious in its application of this policy or this interpretation of its rule. IDEM has a policy of maintaining at least one monitoring station in each area and the agency has consistently followed the policy. \* \* \*

10. IDEM has demonstrated consistency in its decisions on ambient [sulfur dioxide] monitoring waivers with the goal of preserving a minimal network and preventing the type of voids in the network that would result from the absence of any monitoring site in the Clifty Creek vicinity.

**ORDER**

IDEM's motion for summary judgment is hereby **GRANTED** and IKEC's motion for summary judgment is hereby **DENIED.**

Appellant's App. at 26–32 (emphasis in original).

On June 4, 2003, IKEC filed a petition for judicial review of the OEA's May 8, 2003, final order. Judge Michael Keele in Marion County Superior Court Twelve heard the case. IKEC filed a motion for summary judgment. Judge Keele denied IKEC's motion for summary judgment, and upheld the OEA's order granting IDEM's motion for summary judgment. This appeal ensued.

*Discussion and Decision*

IKEC contends that the OEA erred in granting IDEM's motion for summary judgment. We agree.

I.  Standard of Review

When we review the decision of an administrative agency, we are bound by the same standard of review as the trial court. *Andrianova v. Indiana Family and Soc. Servs. Admin.,* 799 N.E.2d 5, 7 (Ind.Ct.App.2003). We may neither try the case *de novo* nor substitute our judgment for that of the agency. *Indiana Dep't of Envtl. Mgmt. v. Schnippel Constr., Inc.,* 778 N.E.2d 407, 412 (Ind.Ct. App.2002), *trans. denied.* We will reverse an administrative decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to a constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence." Ind.Code § 4–21.5–5–14(d)(1)–(5). "A decision is arbitrary and capricious when it is made without any consideration of the facts and lacks any basis that may lead a reasonable person to make the same decision made by the administrative agency." *Schnippel Constr.,* 778 N.E.2d at 412. "The party seeking judicial review bears the burden of demonstrating that the agency's action is invalid." *Andrianova,* 799 N.E.2d at 8.

In an administrative adjudication, a party may move for summary judgment. Ind. Code § 4–21.5–3–23(a). Summary judgment is appropriate where "a genuine issue as to any material fact does not exist and ... the moving party is entitled to a judgment as a matter of law." Ind.Code § 4–21.5–3–23(b). We have held that "'a genuine issue of material fact exists where facts concerning an issue which would dispose of litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue.'" *Schnippel Constr.,* 778 N.E.2d at 412 (quoting *Briggs v. Finley,* 631 N.E.2d 959, 963 (Ind.Ct.App.1994), *trans denied* ). The party moving for summary judgment bears the burden of making a prima facie showing that there is no genuine issue of material fact and that he or she is entitled to a judgment as a matter of law. *Ling v. Stillwell,* 732 N.E.2d 1270, 1274 (Ind.Ct. App.2000), *trans. denied.* Once the moving party meets these two requirements, the burden shifts to the non-moving party to show the existence of a genuine issue of material fact by setting forth specifically designated facts. *Id.*

## II. IDEM and OEA's Interpretation of the Rule

IKEC argues that both IDEM and OEA have misconstrued the waiver provision of the Rule, and, because of that, OEA's order granting IDEM's motion for summary judgment is arbitrary and capricious. In full, the Rule's waiver provision provides:

A source owner or operator may petition the commissioner for an administrative waiver of all or some of the requirements of this section if such owner or operator can demonstrate that ambient monitoring is unnecessary to determine continued maintenance of the sulfur dioxide ambient air quality standards in the vicinity of the source. The demonstration shall address uncertainties in any air quality dispersion models used in the demonstration and shall address the adequacy of any existing monitoring data to characterize the worst-case ambient concentrations in the vicinity of the source. A waiver shall be effective upon written approval by the commissioner. The commissioner may establish conditions in the approval of a waiver to assure compliance with the provisions of this article. Failure to continuously meet the requirements for obtaining a waiver or failure to comply with any condition contained in the approval of a waiver shall render void any waiver issued.

326 IAC 7–3–2(d).

When we construe an administrative rule, we use the same principles employed to construe statutes. *Schnippel Constr.*, 778 N.E.2d at 415. The interpretation of a statute is a question of law reserved for the courts, and is reviewed under a *de novo* standard. *Bourbon Mini–Mart, Inc. v. Commissioner, Indiana Dep't of Envtl. Mgmt.*, 806 N.E.2d 14, 20 (Ind.Ct.App.2004). "The cardinal rule of statutory construction is to ascertain the intent of the legislature by giving effect to the ordinary and plain meaning of the language used." *Id.* If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. *Id.* However, when the language of a statute is reasonably susceptible to more than one construction, we must construe the statute to determine the apparent legislative intent. *Id.* If a statute is subject to different interpretations, the interpretation of the statute by the administrative agency charged with the duty of enforcing the statute is entitled to great weight. *Indiana Dep't of Envtl. Mgmt. v. Boone County Res. Recovery Sys., Inc.*, 803 N.E.2d 267, 273 (Ind.Ct.App.2004), *trans. denied.* However, an agency's interpretation that is incorrect is entitled to no weight. *Noland v. Indiana Family and Soc. Services Admin., Div. of Disability, Aging, and Rehabilitative Services*, 743 N.E.2d 1200, 1203 (Ind.Ct.App.2001). If an agency misconstrues a statute, there is no reasonable basis for the agency's ultimate action, and, therefore, the trial court is required to reverse the agency's action as being arbitrary and capricious. *Id.*

In their motions for summary judgment filed with the OEA, both IKEC and IDEM offered their own interpretations of the waiver provision of the Rule. In its order granting IDEM's motion for summary judgment, OEA concluded that IDEM's interpretation was reasonable and adopted it. IDEM's interpretation of the waiver provision of the Rule is founded upon the premise that ambient monitoring is the only way to determine whether IKEC is continuing to maintain the sulfur dioxide ambient air quality standards in the vicinity of Clifty Creek. IDEM contends that in order for IKEC to obtain a waiver of all of its monitoring requirements, it must show that there is at least one, if not more, alternative sources of data, besides am-

bient monitoring, from which IDEM can determine whether IKEC is maintaining the sulfur dioxide standards. But, because IDEM believes that ambient monitoring is the only way to determine whether IKEC is maintaining the sulfur dioxide standards, no alternative source of data is acceptable, and IKEC will never be able to prove, as the Rule requires, that ambient monitoring is unnecessary. IDEM asserts that the only way IKEC can obtain a waiver of all of its monitoring requirements under the Rule is if some other entity within ten kilometers of Clifty Creek is conducting ambient monitoring. The data from this monitoring would allow IDEM to determine whether IKEC is maintaining the ambient sulfur dioxide standards. The OEA concluded that because there was no other entity within ten kilometers of Clifty Creek conducting ambient monitoring, IDEM properly denied IKEC's petition for a waiver of all of its monitoring requirements under the Rule.

IKEC begins by arguing that there are other ways to determine whether it is continuing to maintain the sulfur dioxide ambient air quality standards besides ambient monitoring. IKEC points out that past ambient monitoring data and air quality dispersion modeling are both accurate predictors of whether a source will continue to maintain the sulfur dioxide standards. IKEC must sample the coal that it burns in order to determine how much sulfur dioxide it may release into the air. The results of this coal analysis are sent to IDEM. IKEC argues that IDEM could determine whether it was continuing to maintain the ambient sulfur dioxide standards based on this data. IKEC also notes that it is required to continuously monitor its sulfur dioxide emissions as they exit the smokestacks. Presumably, based upon this data IDEM could determine whether IKEC was maintaining the ambient sulfur dioxide standards. Based

upon the record before us, we cannot ascertain whether there are other ways, besides ambient monitoring, to determine if IKEC is continuing to maintain the sulfur dioxide ambient air quality standards. However, at the very least, we believe that this would constitute a genuine issue of material fact, and thus would preclude the granting of summary judgment in IDEM's favor.

Nevertheless, we believe that both IDEM and the OEA have misconstrued the Rule. Although the Rule provides that a source owner or operator may obtain a waiver of *all* of his or her monitoring requirements under the Rule, IDEM's interpretation of the Rule makes this virtually impossible. IDEM believes that ambient monitoring is the only way to determine whether a source, like Clifty Creek, is continuing to maintain the sulfur dioxide ambient air quality standards. But if ambient monitoring is the only way to determine continued maintenance of the standards, then IKEC will never be able to make the requisite showing that ambient monitoring is unnecessary to determine continued maintenance of the standard, and, thus, it could never obtain a waiver of all of its monitoring requirements.

However, IDEM counters that it is possible for IKEC to obtain a waiver of all of its monitoring requirements under the Rule if it can show that there is some other entity within ten kilometers of Clifty Creek that is conducting ambient monitoring. This construction of the Rule is so overly narrow as to be unreasonable. Nor does any language in the Rule itself support this reading of the Rule. Nothing in the Rule says that a source owner can only obtain a waiver of all of his or her monitoring requirements if there is another entity within ten kilometers of the source that is conducting ambient monitoring.

IDEM's interpretation of the Rule also seems to make the second sentence of the Rule obsolete. The second sentence of the Rule contemplates that the party seeking a waiver will demonstrate, presumably using the referred-to air quality dispersion models or existing monitoring data, that ambient monitoring is unnecessary to determine continued maintenance of the ambient sulfur dioxide standards. IDEM's reading of the Rule would make such a demonstration unnecessary. The only demonstration that IDEM would require is a showing by the source that there is some other entity within ten kilometers of the source that is conducting ambient monitoring.

█ IKEC's interpretation of the Rule, though, is also not altogether accurate. IKEC argues that it is entitled to a waiver of all of its monitoring requirements under the Rule if it shows that it is likely to continue to maintain the sulfur dioxide ambient air quality standards in the future. We agree that this is part of what an applicant for a waiver of all requirements under the Rule must show, but we also believe that an applicant must show something more. Because the Rule is susceptible to more than one construction, it is appropriate for us to interpret it. We conclude that the demonstration referred to in the second sentence of the Rule has two components. First, as IKEC argues, an applicant seeking a waiver of all of the monitoring requirements under the Rule must show that it is likely to continue to maintain the sulfur dioxide ambient air quality standards in the future. Second, as IDEM contends, the applicant must

show that there is at least one or more alternative sources of data available, besides ambient monitoring at the source, from which IDEM can determine whether a source is continuing to maintain the sulfur dioxide ambient air quality standards in the vicinity of the source.[1]

We therefore conclude that both IDEM and the OEA misconstrued the Rule, and thus the OEA's granting of IDEM's motion for summary judgment was arbitrary and capricious.

### III. Invalid Rule

█ IKEC next argues that the OEA's order granting IDEM's motion for summary judgment is not in accordance with the law because it subjects IKEC to the requirements of an unpublished and invalid IDEM rule. The unpublished rule in question is found in an affidavit given by Dick Zeiler, an employee of IDEM who is a branch chief of the Air Monitoring Branch in the Office of Air Quality. Zeiler states that "IDEM requires ambient monitoring for purposes of 326 IAC 7–3 to be located no more than 10 kilometers from the source of the [sulfur dioxide] emissions." Appellant's App. at 355. The OEA accepted this statement as IDEM policy and applied this policy against IKEC when it concluded that IDEM had properly denied IKEC a waiver of its monitoring requirements under the Rule because there was no other entity within ten kilometers of Clifty Creek that was conducting ambient monitoring.

█ Our supreme court has previously stated that "administrative agencies may make reasonable rules and regula-

---

1. However, it is relevant to note that the language in the Rule relating to the issuance of a waiver for all or some of a source's monitoring requirements under the Rule is discretionary. There is no language in the Rule that absolutely requires IDEM to grant a waiver. Therefore, on remand, nothing in this opinion would prevent IDEM, after conducting a hearing, from exercising its discretion to deny IKEC's petition for a waiver if it finds that there is no other way, besides ambient monitoring, for it to determine whether IKEC is maintaining the sulfur dioxide standards.

tions to apply and enforce legislative enactments." *Indiana Dep't of Envtl. Mgmt. v. Twin Eagle LLC*, 798 N.E.2d 839, 847 (Ind.2003). However, IDEM may only regulate by a new rule if the proper rulemaking procedures have been followed. *Id.* Thus, in establishing new rules, an administrative agency must comply with Indiana's Administrative Orders and Procedures Act (AOPA), Indiana Code chapter 4–22–2, which includes provisions for public hearings and review by executive branch officials. *Id.* at 847–48. "By contrast, agency actions that result in resolutions or directives that relate to internal policy, procedure, or organization, and do not have the effect of law, are not subject to the same requirements." *Id.* at 848.

An administrative agency must comply with the rulemaking procedures outlined in the AOPA only if they are promulgating a rule. Therefore, we must first determine whether IDEM's "ten kilometers" policy enunciated in Dick Zeiler's affidavit is a rule. Indiana Code section 4–22–2–3(b) defines a "rule" as:

> [T]he whole or any part of an agency statement of general applicability that:
> (1) has or is designed to have the effect of law; and
> (2) implements, interprets, or prescribes:
> (A) law or policy; or
> (B) the organization, procedure, or practice requirements of an agency.

IDEM's "ten kilometers" policy is a rule because it is an agency statement of general applicability that is designed to have the effect of law and implements or interprets the Rule. The "ten kilometers" policy does not relate solely to IDEM's internal policies, procedures, or organization. In adopting the "ten kilometers" rule, IDEM was required to follow the rulemaking procedures provided in the AOPA. IKEC cor-

rectly argues that there is no evidence that IDEM followed the rulemaking procedures of the AOPA when it promulgated the "ten kilometers" rule. Therefore, pursuant to Indiana Code section 4–22–2–44, the "ten kilometers" rule does not have the effect of law, and the OEA erred in applying this rule against IKEC.

■ Furthermore, Indiana Code section 13–14–1–11.5 also indicates that the OEA's use of IDEM's "ten kilometers" policy was erroneous. Indiana Code section 13–14–1–11.5(a)(2) provides that if a department proposes to utilize a policy that has not been adopted in compliance with the AOPA, the proposed policy may not be put into effect until the requirements of Indiana Code section 13–14–1–11.5(b) have been met. Indiana Code section 13–14–1–11.5(b) provides:

> The department shall present the proposed policy or statement under subsection (a) to the appropriate board. At least forty-five (45) days before the presentation, the department shall make available to the public, including posting on the department's web site:
> (1) the proposed policy or statement;
> (2) information on the availability for public inspection of all materials relied upon by the department in the development of the proposed policy or statement, including, if applicable:
> (A) health criteria;
> (B) analytical methods;
> (C) treatment technology;
> (D) economic impact data;
> (E) environmental assessment data; and
> (F) other background data;
> (3) the date, time, and location of the presentation under this subsection to the appropriate board; and

(4) information regarding the opportunity for a person to comment to the department and the appropriate board on the proposed policy or statement before or at the time of the presentation under this subsection.

There is no evidence here that either the OEA or IDEM have complied with the requirements of Indiana Code section 13–14–1–11.5(b) with regard to the "ten kilometers" policy.

However, IDEM argues that, in fact, it did not create the "ten kilometers" rule. IDEM contends that the "ten kilometers" rule was created by the federal Environmental Protection Agency in 40 CFR 58, Appendix D. 40 CFR 58, Appendix D, sets out guidelines for the proper siting distances of monitoring stations. 40 CFR 58, Appendix D, does not create or even mention a "ten kilometers" rule. The "ten kilometers" rule is IDEM's creation and should have been promulgated pursuant to the AOPA's established guidelines.

We therefore conclude that IDEM's "ten kilometers" rule should have been promulgated pursuant to the rulemaking procedures outlined in the AOPA, and, because it was not, this rule does not have the effect of law. OEA's application of the "ten kilometers" rule against IKEC was not in accord with the law, and requires the reversal of the OEA's order granting IDEM's motion for summary judgment.

IV. Improper Standard of Review

IKEC also argues that we should reverse the OEA's order granting IDEM's motion for summary judgment because the OEA applied an improper standard of review. In its order granting IDEM's motion for summary judgment, OEA stated, "Courts and, by extension, administrative adjudicatory agencies, must give considerable deference to an agency's interpretation of the statute it is charged with enforcing." Appellant's App. at 30. IKEC contends that in its order, OEA erroneously applied an appellate standard of review rather than a *de novo* standard of review. To support its position, IKEC cites *Indiana Dep't of Natural Res. v. United Refuse Co., Inc.,* 615 N.E.2d 100, 104 (Ind. 1993), where our supreme court held that when an administrative law judge does not perform a *de novo* hearing, the administrative proceeding was not in accordance with the procedure required by law, and the aggrieved party is entitled to a new hearing before an administrative law judge.

However, IDEM attempts to distinguish *United Refuse* by pointing out that in that case the ALJ conducted an evidentiary hearing, while here there was no evidentiary hearing. Regardless of the fact that no evidentiary hearing was held here, we conclude that the ALJ erred by not applying a *de novo* standard of review. Pursuant to Indiana Code section 4–21.5–3–27(a) and (b), an ALJ serves as the trier of fact in an administrative hearing. Thus, an ALJ "performs a duty similar to that of a trial judge sitting without a jury." *United Refuse,* 615 N.E.2d at 104. In such a situation, a *de novo* standard of review is proper. Therefore, because the ALJ did not apply a *de novo* standard of review, the OEA's order granting IDEM's motion for summary judgment was not in accordance with the procedure required by law and IKEC is entitled to a new hearing.

*Conclusion*

We conclude that the OEA's order granting IDEM's motion for summary judgment must be reversed because the OEA misconstrued the Rule, applied an invalid unpromulgated rule against IKEC, and used an inappropriate standard of review. The OEA's order granting IDEM's motion for summary judgment is therefore

reversed and we remand for further proceedings consistent with this opinion.

Reversed and remanded.

KIRSCH, C.J., and BAKER, J., concur.