Edward L. ROBERTS, Appellant–Plaintiff,

v.

COUNTY OF ALLEN, Indiana, Appellee–Defendant.

No. 92A04–0201–CV–26.

Court of Appeals of Indiana.

Aug. 20, 2002.

J. Timothy McCaulay, Helmke, Beams, Boyer & Wagner, Fort Wayne, IN, Attorney for Appellant.

John O. Feighner, Haller & Colvin, P.C., Fort Wayne, IN, Attorney for Appellee.

## OPINION

SULLIVAN, Judge.

Edward Roberts appeals following the trial court's decision upholding the Allen County Sheriff's Merit Board's ("the Board") action to dismiss Roberts from employment with the Allen County Sheriff's Department. He presents two issues for our review: whether the decision of the Board was arbitrary and capricious, and whether he was properly assessed costs.

We reverse.

A review of the decision of the Board and the minutes from the Board meetings, at which the disciplinary action against Roberts was discussed, reveal that Roberts was charged with Operating a Vehicle While Intoxicated and for committing acts of misconduct pertaining to a female who was under the jurisdiction of the Allen County Superior Drug Court. A hearing to afford Roberts the process which is required by Ind.Code § 36–8–10–11 (Burns Code Ed. Repl.1995) was scheduled for the morning of March 29, 2001. Roberts, however, did not attend the hearing, but rather, had phoned his attorney and left a message that he was not feeling well and asked for a continuance. His attorney, Patrick Arata, informed the Board of his client's illness, but stated that he had not been able to get in touch with Roberts that morning and did not know from what Roberts was suffering. Mr. Arata then asked for a continuance. The Sheriff's attorney, Mr. Feighner, opposed any continuance and requested that the hearing be conducted in Roberts' absence. Mr. Arata then asked for a continuance with the understanding that if Roberts did not provide sufficient medical proof explaining his absence, the Board could then enter a default judgment against his client. Mr. Arata also agreed to stipulate to the evidence that the State sought to admit.

In response to Mr. Arata's suggestion that a default judgment be entered if Roberts could not provide sufficient medical proof of his illness, Mr. Feighner stated that a "doctors' [sic] slip or some sort of lame excuse is not going to carry the day." Appendix at 37. Rather, the Sheriff wanted real medical evidence and reserved the right to have the doctor who treated Roberts testify before the Board if the Sheriff had questions about Roberts' reason for missing the hearing. Upon questioning by Ms. Mary Barksdale, a member of the Board, regarding the right to call the doctor to testify, Mr. Feighner anticipated that there may be a controversy about whether Roberts was sick and stated that "a doctors [sic] slip could mean a lot of things." App. at 38. Following the discussion, a motion was made by Mr. Donald Swanson stating that if Roberts failed to "show very compelling proof that he was physically unable to come here because of medical disability, that he would then be defaulted and that he would be terminat-

ed." App. at 39. The motion was unanimously passed by the Board.

The Allen County Sheriff then sent a letter to Roberts requiring that he submit, by 8:00 a.m. on April 6, proof that he was physically unable to attend the hearing held on March 29. The Board scheduled a second hearing for April 11 to resolve the issue of whether Roberts had a valid medical reason for missing the first scheduled hearing.

Mr. Arata was on vacation during the time period that Roberts was authorized to provide medical proof of his physical inability to attend the first hearing. However, while Mr. Arata was on vacation, Roberts provided a medical report to the Sheriff showing that he received treatment for a migraine headache on March 31, 2001, at approximately 8:00 p.m.

At the April 11 hearing, Mr. Arata objected to the hearing upon the grounds that he had not been able to discuss the sufficiency of the medical report with Roberts, had not had the opportunity to talk with the treating physician, and that he understood that the Sheriff would question the doctor if the proof provided by Roberts was insufficient. Mr. Arata then offered as evidence the *Mayo Clinic Family Health* book for the Board's review of the symptoms and effects of a migraine headache. Roberts was also given the opportunity to answer the questions of the Board members regarding his headaches and circumstances relating to his condition on March 29. Following that discussion, the Board then voted to hold an Executive Session at a later date to discuss the sufficiency of Roberts' medical proof. The Executive Session was held after giving public notice, and on April 20, 2001, the Board held a public meeting to announce the results of the Executive Session. The Board announced that they unanimously agreed that the medical proof was insuffi-

cient and entered a default judgment against Roberts. The Board ordered that Roberts be discharged for just cause.

 Appellate review of an administrative decision is limited. *Bird v. County of Allen*, 639 N.E.2d 320, 327 (Ind.Ct.App. 1994). We give deference to the expertise of the administrative body and will not reverse its discretionary decisions without a showing that the decision was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law. *Id.* We limit our review to determining whether the administrative body adhered to proper legal procedure and made a finding based upon substantial evidence in accordance with appropriate constitutional and statutory provisions. *Id.* We do not substitute our judgment for that of the administrative body and will not modify a penalty imposed in a disciplinary action unless there is a showing that such action was arbitrary and capricious. *Id.* at 327–28.

 A decision is arbitrary and capricious when it is made without any consideration of the facts and in total disregard of the circumstances and lacks any basis which might lead a reasonable and honest person to make the same decision. *Id.* at 328. The burden of proving that a decision is arbitrary and capricious rests with the challenging party. *Id.* Substantial evidence is such relevant evidence which a reasonable mind might accept as adequate to support the conclusion. *Id.* Upon review, we do not reweigh the evidence. *Id.*

 Procedural safeguards should be at the highest level workable under the circumstances in proceedings before administrative bodies. *City of Mitchell v. Graves*, 612 N.E.2d 149, 152 (Ind.Ct.App. 1993). We take cognizance of the practicalities and peculiarities of each particular case in determining whether constitu-

tional requirements of due process have been met. *Id.*

▇▇▇▇ Roberts challenges the Board's decision as arbitrary and capricious upon two grounds. Specifically, he contends that the Board ignored the Sheriff's statement from the March 29th hearing that he would bring the doctor in and question him if there were any questions about the sufficiency of Roberts' medical explanation. He also asserts that the amount of time allotted for him to provide sufficient medical proof was insufficient for his attorney to prepare for the hearing on April 11.

While an administrative body is generally given deference in discretionary matters, we cannot agree with the decision to enter a default judgment against Roberts under the facts presented to the Board. The motion which was passed by the Board and which granted a continuance, stated that "very compelling proof" would be required in order for Roberts to receive a hearing on the merits, rather than having a default judgment entered against him. The evidence presented to the Board consisted of Roberts' testimony stating that he had suddenly fallen ill with a migraine headache on the Wednesday evening before the hearing and did not answer his phone because he turned the ringer off due to the severity of the headache. He stated that he did not go to his regular doctor, but rather went to StatCare on Saturday evening because he was not physically able to seek medical treatment any sooner. The Board was also presented with a sheet containing the doctor's diagnosis of Roberts' condition. The sheet enumerated the symptoms suffered by Roberts, showed that he had been previously treated for migraine headaches and was taking medication for them, and revealed that medication was prescribed and administered at StatCare.[1] Mr. Arata presented evidence with regard to migraine headaches, including a discussion of their length, severity, and sudden onset. The only information which was presented to the Board which did not support Roberts' claim was a statement by Mr. Feighner announcing that there was a witness available who would testify that Roberts had been at a bar the evening before the first hearing and that Roberts had been drinking rum and coke. However, even if this statement were true, it did not refute Roberts' claim because it was not inconsistent with his acknowledgement that he had been out and had suddenly become ill.

Based upon all of the evidence presented to the Board, we are constrained to hold that the Board's decision that the medical proof of Roberts' absence was insufficient to prevent a default judgment from being entered against him was arbitrary and capricious. The Board's decision is inconsistent with the facts which were presented to it. All of the evidence presented indicated that Roberts had become suddenly ill with a migraine headache. While it is true that Roberts did not seek medical treatment until over two days later, that fact is not fatal to his claim. His explanation for the delay was consistent with the debilitating effects that a migraine headache may have upon an individual, and the evidence showed that he had been receiving treatment for migraines prior to this episode. Upon these facts, no reasonable person could conclude other than that

---

1. In its brief, the Board alleges that the medical diagnosis was nothing more than the medical slip which Mr. Feighner claimed would not be sufficient, and therefore Roberts should not have been surprised by the Sheriff's and the Board's determination that the information provided was insufficient. However, the paper provided to the Board was not simply a note saying that Roberts had been to the doctor; rather, it was a complete medical diagnosis which also showed history of symptoms and treatment for migraine headaches.

Roberts missed the March 29 hearing because he was suffering from a migraine headache.[2] We reverse the discharge of Roberts entered upon the default judgment and order the Board to conduct a hearing upon the merits of the case against Roberts.

We also find support for this decision in the relatively short amount of time which was given to Roberts to prepare for the April 11 hearing to determine whether his medical reason for missing the first hearing was sufficient. In Graves, this court held that an eight day period provided to a police officer in which to prepare a defense to a hearing resulting in his dismissal was insufficient and constituted a denial of due process. 612 N.E.2d at 152–53. In Graves, Officer Graves was given notice on December 4, 1991, that a hearing would be held on December 12, 1991. He hired an attorney to represent him, and on December 9, the attorney advised the Mayor of his appearance in the matter and requested a continuance. Graves' attorney received no response to his request. At the December 12 hearing, Graves requested a continuance in order that he could be represented by his attorney. The request was denied, Graves left the hearing and after witnesses were heard concerning the charges was terminated from employment. Graves, 612 N.E.2d at 152.

In the present case, the Board continued the first hearing at Mr. Arata's request.

The Sheriff and the Board then set deadlines and a hearing to occur within the following two weeks for the admission of proof that Roberts was physically unable to attend the hearing. During this time, both Mr. Arata and Mr. Feighner, the Sheriff's attorney, were on vacation, which had apparently been made known to the Board. No notice was given to Mr. Arata or Roberts that the Sheriff deemed the medical diagnosis to be insufficient. Roberts, along with Mr. Arata, was given no time to prepare a defense to a claim that the medical proof was insufficient. Instead, Roberts and Mr. Arata attended the April 11 hearing with the belief that if the Sheriff deemed the medical proof insufficient, they would then call the doctor who treated Roberts so that he could answer any questions that the Sheriff or the Board may have had. However, this was not done. Under the circumstances, we must agree that Roberts was not afforded proper due process.

We reverse the judgment of the trial court upholding the Allen County Sheriff's Merit Board's decision to enter a default judgment against Roberts and terminate his employment. The matter is remanded with instructions to further remand the matter to the Board for further proceedings not inconsistent with this opinion.

We also vacate the order requiring Roberts to pay costs for his appeal.[3]

2. Because of our holding in this regard we do not sua sponte address the question of whether notwithstanding Roberts' failure to appear at the March 29 scheduled hearing, it was appropriate for the Board to terminate Roberts' employment without hearing some evidence upon the merits of the charges. But see Graves, 612 N.E.2d at 151 in which the Board denied police officer a continuance in order to have attorney present. The officer left the hearing which proceeded in his absence, after which, the Board terminated the officer's employment.

3. We do not address the merits of whether it was proper for the trial court to assess costs for transcription expenses to Roberts following his unsuccessful appeal at the trial court. According to Ind.Code § 36–8–10–11 (Burns Code Ed. Repl.1995), the party appealing the decision of the board must file a bond which insures that the party will pay all costs if the court finds that the board's decision should be affirmed. Because we reverse the trial court's order upholding the Board's decision, we vacate the order requiring Roberts to pay costs.

DARDEN, J., concurs.

BAKER, J., dissents with separate opinion.

BAKER, J., dissenting.

As one of my colleagues often wryly notes, "No good deed goes unpunished."

After sixteen months, Roberts's appeal to the Whitley Circuit Court, and Roberts's appeal to this court, the Board is back to square one and must give Roberts the process that is purportedly "due" him. In my view, such a result makes a mockery of the justice system and cheapens the very due process tradition our courts seek to uphold.

The Merit Board would have been well within its discretion to proceed with the public hearing in Roberts's absence on March 29, 2001. Employees subpoenaed from the probation department, two detectives who had investigated the case, and another witness were all present to testify at 8:30 a.m. that morning. Roberts's attorney was also present and had even brought a witness and prepared exhibits for Roberts's defense. Nevertheless, the Board graciously agreed to continue the hearing on the flimsiest of last-minute excuses: Roberts left a message on his attorney's answering machine on the morning of the hearing claiming that he was ill.

The farce begins, innocently enough, with an attorney's plea for a continuance in exchange for a conditional stipulation to a default judgment. The attorney will stipulate to the charges if his client's proof of medical disability is deemed less than compelling at the continued hearing. The Board agreed that, to avoid the proposed default judgment, Roberts must "show very compelling proof that he was physically unable to come here because of medical disability." Appellant's App. p. 39. At the continued hearing thirteen days later, the Board had before it Roberts's proof of

disability: (1) a one-page form from a prompt-care clinic; (2) a section on migraines published in the *Mayo Clinic Family Health* book; and (3) Roberts's self-serving testimony about his medical condition.

His evidence is not compelling. First, the prompt-care form noted that Roberts complained of nausea and headache, that he was diagnosed with a migraine, and that he had a medical history of migraine headaches. The prompt-care report showed, however, that Roberts decided to seek treatment two and a half days after the March 29 hearing and from someone other than his regular treating physician. Second, the *Mayo* book informed the Board that in general migraines can strike suddenly and can cause intense pain, nausea, and vomiting. But the *Mayo* book did not show that Roberts was experiencing intense pain, nausea, and vomiting on the morning of the hearing. Third, when asked why it took two and a half days to seek treatment, Roberts's response drifted into utter incoherency:

[Roberts]: Quite frankly, I've been off work since October with headaches. And when I get them, they—sometimes they come on—come on very suddenly, sometimes they don't. But in this particular case, I was not able to come to work, come on to the doctor until Saturday because—

[Board Member]: Or answer the phone on [the day of the hearing]?

[Roberts]: Exactly. I turn my ringers off because—if you've never had migraine headaches, you couldn't understand, but they're very severe, and they come on very sudden. As far as the opinion that [my attorney] was talking about, I did ask, and I won't—him his—him his name, as a—unless they require that, but it did come on,

and I asked the friend to take me home, and I went to bed, [the night before the hearing] 8:00 at night.

Appellant's App. p. 60.

The majority asserts: "Upon these facts, no reasonable person could conclude other than that Roberts missed the March 29 hearing because he was suffering from a migraine headache." Slip op. at 7. To the contrary, a reasonable person could conclude that Roberts skipped the hearing, invented an unverifiable medical disability to account for his absence, and offered this story to the Board to forestall his termination. In an attempt to explain the dearth of compelling proof, Roberts complains to this court that the thirteen days between the March 29 hearing and the April 11 hearing were insufficient to prepare proof of his medical disability. He contends that the April 11 date did not allow him "to be heard in a meaningful time and in a meaningful manner." Appellant's Br. p. 16. But Roberts never explains why the thirteen-day continuance lacks meaningfulness. He does not, for instance, show that more time would have allowed his attorney to talk to the prompt-care physician or Roberts's regular physician *and, as a result,* present a stronger case before the Board.

As the majority notes, we review the decisions of a Merit Board for abuse of discretion or a showing that the Board acted in an arbitrary and capricious manner. Slip op. at 4 (citing *Bird v. County of Allen,* 639 N.E.2d 320, 327 (Ind.Ct.App. 1994)). Had the Board denied Roberts's attorney's request for a continuance on the morning of the hearing, it would have done so without any abuse of discretion. *Cf., e.g., Tapia v. State,* 753 N.E.2d 581, 586–87 (Ind.2001) (finding no abuse of discretion in denying a post-conviction petitioner's request for a continuance where petitioner failed to show what he would have gained

by forestalling an evidentiary hearing); *Troutman v. State,* 730 N.E.2d 149, 153 (Ind.2000) (finding no abuse of discretion in denying motion for continuance for, among other reasons, State's potential inability to coordinate schedules of witnesses and defendant's failure to show prejudice); *Maxey v. State,* 730 N.E.2d 158, 161 (Ind. 2000) (finding no abuse of discretion in denying motion for continuance where defense counsel had ample time to prepare for trial and there was no showing of prejudice). The record shows that a number of witnesses had appeared for the March 29 hearing and that Roberts's attorney was prepared to go forward at the hearing. In fact, his attorney stressed that he "had spent a lot of time to be prepared for [the March 29 hearing]." Appellant's App. p. 56. But for defense counsel's plea for a continuance in exchange for a stipulated default judgment, the Board would have proceeded with the March 29 hearing. Appellant's App. p. 34–35. If such a procedure constitutes error, it was invited and may not be challenged on appeal. *See Joyner v. State,* 736 N.E.2d 232, 237 (Ind.2000) ("A defendant may not invite error and then complain on review.").

Today's result isn't the process due Roberts under our once venerable, and now deservedly maligned, Anglo American tradition of protecting citizens from arbitrary and capricious government. If it is, then the process due mendacious litigants is the suspension of well-founded disbelief and the abandonment of common sense. Moreover, no future board will make the same mistake of extending mercy to a party whose attorney makes a last-minute, faintly suspicious request for a continuance. Any board that values its time, witnesses' time, and the time of attorneys appearing before it would be foolish to waste the opportunity to proceed and risk

sixteen months of litigation on an issue completely irrelevant to the merits. Unless, of course, a yet-to-be-discovered due process emanation will someday forbid the denial of any continuance request.

Accordingly, I respectfully dissent and vote to affirm the trial court in all respects.