Frank J. ANDERSON, Sheriff, Marion County Sheriff's Department, and Marion County, Indiana, Appellants–Defendants,

v.

David ELIOT, Appellee–Plaintiff.

No. 49A04–0611–CV–655.

Court of Appeals of Indiana.

June 12, 2007.

---

Allison Wells Gritton, Office of Corporation Counsel, for the City of Indianapolis, Indianapolis, IN, Attorney for Appellant.

John F. Kautzman, Ruckelshaus, Kautzman, Blackwell, Bemis & Hasbrook, Indianapolis, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Frank J. Anderson, Sheriff, Marion County Sheriff's Department ("MCSD") and Marion County, Indiana (collectively, "Marion County") appeal the trial court's denial of its motion to dismiss David Eliot's complaint and reversal of the Marion County Sheriff's Pension Board's determination that Eliot is not entitled to line-of-duty disability benefits.

We affirm in part, reverse in part and remand with instructions.

### ISSUES

1. Whether the trial court had subject matter jurisdiction to review the Pension Board's determination.

2. Whether the trial court properly reversed the Pension Board's determination that Eliot is not entitled to line-of-duty disability benefits.

## FACTS

Eliot served in the United States Navy from 1970 to 1974. During his service, Eliot served on an aircraft carrier, mainly working below deck. Eliot then worked as an emergency medical technician from 1974 to 1976. The MCSD employed Eliot as a sworn member of its department from October 15, 1977 to April 24, 1979, during which time Eliot worked at the Marion County Jail. Eliot resigned from the MCSD in 1979, resuming his work as an emergency medical technician until 1986, when Eliot rejoined the MCSD. The MCSD first assigned Eliot to the Jail Division. On September 13, 1986, the MCSD assigned Eliot to road patrol. On October 23, 1995, the MCSD assigned Eliot to Jail Records, where Eliot worked until his transfer to the Investigation Division on January 23, 1998.

Eliot initially applied for disability retirement in 1995 but withdrew his request on or about January 12, 1996. On or about June 16, 2003, Eliot again applied for disability retirement "due to circulatory and hearing problems." (Marion County's App. 27). Eliot sought disability retirement under the MCSD's personnel retirement plan (the "Plan").

The Plan is a "pension trust ... for the exclusive benefit of the employee beneficiaries," established and operated by the MCSD and a trustee. Ind.Code § 36–8–10–12. Regarding disability benefits, the Plan provides that the MCSD's Pension Board (the "Pension Board")[1] determines whether a participant in the Plan is eligible for disability benefits "based upon medical evidence which is satisfactory to the Pension Board." (Marion County's App. 17). Furthermore, under the Plan, once the Pension Board determines that a participant is entitled to disability benefits, "the Pension Board shall also have the responsibility of determining whether or not disability was incurred in the line of duty." *Id.*

Regarding the approval of benefits, the Plan provides as follows:

> [T]he routine processing benefits shall be approved by the Sheriff or the person he designates. However, in the event of a dispute regarding a benefit, a Participant shall file a written claim with the [Pension Board] prior to commencement of his benefit describing the benefit to which he believes he is entitled. Upon receipt of written notice of any claim, the [Pension Board] shall determine the benefits, if any, payable to the claimant.... Disputed benefits shall be paid under this Plan only if the [Pension Board] decides in its reasonable discretion that the applicant is entitled to them.

(Marion County's App. 18). As to the powers of the Pension Board, the Plan provides:

> [The Pension Board] ... shall have such powers as may be necessary to discharge its duties hereunder including, but not by way of limitations, the power to interpret and construe the Plan, to determine all questions of eligibility and of the status and rights of Participants, their Beneficiaries and others hereunder, to commute payments, and to decide any disputes arising hereunder.

> The decision of the [Pension Board] upon all matters within its power shall be conclusive and binding upon all parties concerned, provided that 1) all persons under similar circumstances shall be treated alike, 2) the [Pension

---

1. The Board consists of five members, including Sheriff Anderson, and administers the Plan.

Board]'s construction is reasonable and made in good faith, and 3) all of the [Pension Board]'s decision[s] shall be subject to the approval of the Employer. *Id.*

The Pension Board held hearings on Eliot's request on February 4, 2004 and March 8, 2004. During the hearings, the Board considered medical evidence, including testimony and letters from medical personnel, as described below.

In a letter dated February 17, 2004, Dr. Steven Moffatt informed the Pension Board as follows:

Mr. Eliot's medical record was obtained from 1995, which included the hearing tests performed at that time. The hearing tests in 1995 were compared to those obtained in 2003 and basically revealed the same pattern of sensorineural hearing damage with the results of 2003 being slightly worse than 1995. I was unable to obtain records from Wishard Hospital with regard to his pre-employment testing in the late 80's.

... The worsening of the 2003 results cannot be directly attributed to any specific hearing insult and can be potentially due to normal progression of an already existing severe hearing loss condition.

(Marion County's App. 38).

Also among the evidence considered were letters from Eliot's personal physician, Dr. Arnold Brown. In a letter dated July 22, 2003, Dr. Brown opined that Eliot's hearing loss was "probably related to his occupational noise experience." (Eliot's App. 16). In a letter dated January 22, 2004, Dr. Brown informed the Pension Board that "Mr. Eliot has noted gradual hearing loss over the past years. This could be of multifactorial etiologies, however, it is reasonable to assume that this could be related to his profession as a police officer for which his profession is at high risk." (Marion County's App. 40).

Dr. Laryn Peterson, an otolaryngologist, wrote in a letter to Dr. Brown that Eliot "has had a lot problems with hearing on-the-job. He is exposed to a lot of noise including gunfire and sirens. He was also exposed to a lot of noise in the military in aircraft." (Eliot's App. 17). Dr. Peterson diagnosed Eliot with "mild to moderately severe sensory neural hearing losses in both ears." (Eliot's App. 18). In a letter to the Pension Board, Dr. Peterson wrote the following:

[Eliot] was exposed to a great deal of noise in the military secondary to aircraft noise. He has also been exposed to a great deal of noise in the Police Department including sirens, burglar alarms, and gunfire over 20 years. With his underlying sensorineural damage from the military, the noise exposure from the Police Department most likely contributed to his present hearing loss.

(Marion County's App. 39).

During the February 4 hearing before the Pension Board, Eliot's counsel stated that Eliot served with the United States Navy for four years, during which Eliot served on an aircraft carrier. Eliot's counsel also stated that Eliot had passed a hearing test in 1977 and again in 1986. Eliot, however, did not present these tests to the Pension Board, presumably because they were unavailable.

Eliot testified that his hearing loss became "critical" in 1995 or 1996, after he stood approximately three or four feet in front of his police vehicle, while the siren was activated. (Marion County's App. 21). Although Eliot testified that he was carrying a shotgun during this incident, he also testified that he did not fire the gun. Eliot further testified that his hearing had been "a problem" prior to that incident. *Id.*

Eliot further testified that although he had "absolutely no doubt" that his "employment has had input on [his] hearing," he would not say "that the military played no part or anything like that." (Marion County's App. 22). Eliot also testified that in 2003, he applied for duty-related disability through the federal government pursuant to his service in the United States Navy and due to his hearing loss; the federal government, however, denied Eliot's claim. Eliot further testified that from 1979 to 1986, he worked as a paramedic, which exposed him to ambulance sirens. In response to questioning, Dr. Moffatt agreed that "it's impossible to specifically say what has caused [Eliot's] hearing loss[.]" (Marion County's App. 22).

According to the transcript of the February 4 hearing, "there were no records or reports indicating any injuries or complaints about hearing problems while on duty" in Eliot's file. (Marion County's App. 28). Also according to the transcript, Dr. Moffatt explained to the Pension Board that hearing loss, such as the kind suffered by Eliot, "can be accelerated if the individual is exposed to loud noises...." (Marion County's App. 28).

During the March 8 hearing, Dr. Moffatt reiterated that the testing performed in 1995 and 2003 "revealed essentially the same moderate to ... moderately severe sensory neuro or sensory nerve damage with 2003 being slightly worse than 1995," which "could very well represent normal progression of an underlying hearing problem." (Marion County's App. 29–30). Eliot's counsel reiterated that Eliot had passed hearing tests in 1977 and 1986. Pension Board member Lieutenant Tom Koppel noted that "there is no evidence that something traumatic could have happened in the gap ... of time when [Eliot]

came back the second time" to the MCSD "while [Eliot] was working for the ambulance" as a paramedic. (Marion County's App. 33). Lt. Koppel also noted that "the same job circumstances are there at the ambulance service that are existing with the Sheriff's Department ... with the only exception that being gunfire...." *Id.*

At the conclusion of the March 8 hearing, the Pension Board voted to place Eliot on medical retirement. The Pension Board, however, denied Eliot's request for line-of-duty disability retirement.[2]

On May 21, 2004, Eliot filed a complaint against the Pension Board in the Marion County Superior Court, after which Marion County filed a motion to dismiss the complaint. On January 11, 2005, Eliot filed an amended complaint against Marion County, asserting that the Pension Board's decision "was unreasonable and made in bad faith, as well as arbitrary, capricious and against the manifest weight of the evidence...." (Marion County's App. 14). Eliot sought a reversal of the Pension Board's "decision that the disability was not in the line of duty and remand and order [Marion County] to find [Eliot]'s disability was in the line of duty...." *Id.*

The trial court denied Marion County's motion to dismiss on January 14, 2005. Marion County then filed a petition for interlocutory appeal, which a panel of this court denied.

The trial court held a hearing on Eliot's complaint on June 19, 2006. During the hearing, the trial court reviewed the evidence submitted to the Pension Board and heard arguments from counsel. On September 14, 2006, the trial court entered findings of fact and conclusions of law. The trial court found, in relevant part, as follows:

2. According to testimony before the trial court, an "out of line of duty" pension benefit

is "50 percent" and an "in line of duty" pension benefit is "74 percent[.]" (Tr. 7).

4. [The Pension Board] was an entity organized under the auspices of the Sheriff's Department, charged with overseeing and administering [the Plan].

5. [Marion County], by and through the Pension Board, ha[s] the authority to determine whether an employee, such as the Plaintiff herein, is entitled to a disability pension. The Pension Board is also to determine whether an employee is entitled to a disability pension for reasons that occurred in the line of duty or not in the line of duty.

A decision of the Pension Board is binding, provided that all persons are treated alike, the decision of the board is reasonable, made in good faith, and is subject to the approval of the employer, as well as otherwise in accordance with law.

\* \* \*

14. The following evidence and information, inter alia, was submitted and reviewed by the Pension Board during the hearings:

a. Testimony relating to a 1995 incident which occurred while Deputy Eliot was on duty. Deputy Eliot apprehended a suspect at gunpoint and was forced to stand only a few feet in front of his squad car while the siren alarmed for several minutes. Later, a shotgun was fired only a few feet away from where Deputy Eliot was positioned.

\* \* \*

15. Throughout the duration of the hearings, no medical evidence was introduced which indicated that Deputy Eliot's hearing disability did not happen in the line of duty.

\* \* \*

17. At all times relevant to this action there was in force Article VII, Section 7.02 of the [Plan], which stated in pertinent part:

A Participant may be determined to be eligible for disability benefits by the Pension Board *based upon medical evidence* which is satisfactory to the Pension Board. In determining if a Participant is eligible for disability benefits under this Section, the Pension Board may accept medical evidence from a physician chosen by the disabled Participant or his legally appointed representative.

18. In making its decision, the Pension Board stated that there was no evidence something traumatic did not happen to Deputy Eliot's hearing while working as an EMT.

19. The Pension Board considered and indeed speculated about facts not in the record.

(Marion County's App. 7–9). The trial court then concluded as follows:

1. This Court has subject matter jurisdiction of the case and personal jurisdiction over the parties.

2. This Court is required to review the decision of the ... Pension Board to determine whether the Pension Board made a determination which was reasonable and in good faith.

3. This Court is also required to review the record of the administrative action to determine whether the administrative body made a finding based on substantial evidence.

4. This court shall reverse the judgment of the administrative body if there is a showing that its finding was not based upon substantial evidence or was otherwise arbitrary and capricious.

5. Substantial evidence is such relevant evidence which a reasonable mind might accept as adequate to support the conclusion.

6. A decision is arbitrary and capricious when it is made without any consideration of the facts and in total disregard of the circumstances and lacks any basis which might lead a reasonable and honest person to make the same decision.

7. Given the overwhelming and uncontested expert medical evidence presented in this case, the decision of the Pension Board was clearly inconsistent and not in accordance with the facts which were presented.

8. By disregarding the abundance of medical opinions indicating that Deputy Eliot's disability was duty related, the [Pension Board] made its decision without consideration of the facts and in total disregard of the circumstances.

9. Based upon the evidence presented to the Pension Board, no reasonable person could conclude other than that Deputy Eliot's disability occurred in the line of duty.

10. The medical evidence introduced at the February 4, 2004 and the March 8, 2004 hearings demonstrated that Deputy Eliot's disability was duty related.

11. Based upon the record as a whole, the [Pension] Board's decision lacks substantial evidence to support its conclusion resulting in an arbitrary and capricious finding.

(Marion County's App. 8–10) (citations omitted). The trial court reversed the Pension Board's decision and remanded with instructions to enter a finding that Eliot's disability occurred in the line of duty.

*DECISION*

Marion County asserts that the trial court erred in conducting a judicial review of the Pension Board's decision. Marion County further asserts that even if the trial court possessed authority to hear Eliot's claim, it erred in reversing the Pension Board's denial of line-of-duty disability benefits.

1. *Judicial Review*

■ Marion County argues that the trial court erred in denying its motion to dismiss because "[n]either the Plan nor the statute authorizing creation of the Plan provides for judicial review of the [Pension] Board's decisions." [3] Marion County's Br. 8. While we agree that neither legislation nor the Plan provides for judicial review, we believe that Eliot is entitled to judicial review of the Pension Board's decision.

■ "Subject matter jurisdiction refers to the power of courts to hear and decide a class of cases." *Kondamuri v. Kondamuri*, 799 N.E.2d 1153, 1156 (Ind. Ct.App.2003), *trans. denied.* A court has subject matter jurisdiction where the claim before it falls within the general scope of authority conferred upon the court by the constitution or by statute. *Id.*

Although Indiana Code section 36–8–10–12 authorizes the establishment of pension plans, such as the Plan, it does not provide for the judicial review of decisions made pursuant to these plans. Furthermore, no provision of the Indiana Code confers authority to review decisions made by the

3. It appears from a review of the chronological case summary that Marion County filed its motion to dismiss pursuant Indiana Trial Rule 12(b)(6), which provides for dismissal for failure to state a claim upon which relief can be granted. We believe, however, that because the threshold question is whether the trial court had subject matter jurisdiction, it would have been more proper to file the motion to dismiss pursuant to Trial Rule 12(B)(1), which provides for dismissal for lack of subject matter jurisdiction. *See Blanck v. Ind. Dep't of Corr.*, 829 N.E.2d 505, 508 (Ind. 2005).

Pension Board. *Cf.* I.C. § 4–21.5–5–1, *et. seq.* (governing judicial review of state agencies' actions); I.C. § 36–8–8–12.7(n) (providing that the determination of a municipal police officer's coverage under the police officers' and firefighters' pension and disability fund is final and may be appealed to the court); I.C. § 36–8–10–11(a) (providing that the dismissal, demotion, or temporary suspension of a county police officer following a hearing before the board is reviewable in the circuit court). Thus, the legislature has not provided a scheme by which a participant of the Plan may seek review of the Pension Board's decisions.

We further note that the Plan itself fails to provide for the review of the Pension Board's decisions. While the Plan does provide that the Pension Board's decisions "shall be conclusive and binding upon all parties concerned, *provided that* 1) all persons under similar circumstances shall be treated alike, 2) the [Pension Board]'s construction is reasonable and made in good faith, and 3) all of the [Pension Board]'s decision [sic] shall be subject to the approval of the Employer," it does not set forth a procedure for either the appeal or the review of any decisions falling within the exceptions to finality of the Pension Board's decisions. Thus, it does not appear that there exists a procedure, either statutory or pursuant to the Plan, to resolve disputes. We therefore look next at whether the provisions of the Indiana Constitution create subject matter jurisdiction over claims seeking judicial review of the Pension Board's decisions.

Article 1, Section 12 of the Indiana Constitution provides in part, "All courts shall be open; and every person, property, or reputation, shall have remedy by due course of law." As such, there is a right of access to the courts. *See Martin v. Richey*, 711 N.E.2d 1273, 1283 (Ind.1999). This is particularly applicable where neither statute nor the Plan provides a mechanism by which to appeal a decision made by the Pension Board, and perhaps more importantly, where neither statute nor the Plan *prohibits* judicial review. Accordingly, we find that Eliot is entitled to judicial review of the Pension Board's denial of line-of-duty disability.[4]

## 2. *Disability Finding*

■ Marion County asserts that the trial court erred in determining that its denial of line-of-duty benefits was arbitrary and capricious. Specifically, Marion County contends that the evidence submitted was sufficient to support its determination and that the trial court improperly reweighed the evidence and substituted its judgment for the Pension Board's when it determined that Eliot's evidence was sufficient to establish that his disability occurred in the line of duty.

■ We are mindful that judicial review, by both the trial court and this court, of an administrative decision is limited. *See Roberts v. County of Allen*, 773 N.E.2d 850, 853 (Ind.Ct.App.2002) (citations omitted), *trans. denied.* Courts must defer to the administrative body's expertise and shall not reverse a discretionary decision absent "a showing that the decision was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* A court must limit its review to determining "whether the administrative body adhered to proper legal procedure and made a finding based upon substantial evidence in accordance with ap-

---

4. Our holding in no way suggests that the Plan may not establish a fair and adequate procedure to resolve disputes. Furthermore, the legislature clearly may enact statutory authorization, providing for a review or appeal process.

propriate constitutional and statutory provisions." *Id.*

A decision is arbitrary and capricious when it is made without any consideration of the facts and in total disregard of the circumstances and lacks any basis which might lead a reasonable and honest person to make the same decision. The burden of proving that a decision is arbitrary and capricious rests with the challenging party. Substantial evidence is such relevant evidence which a reasonable mind might accept as adequate to support the conclusion.

*Id.* A reviewing court does not reweigh the evidence. *Id.*

On appeal, to the extent a trial court's factual findings were based on a paper record, we shall conduct our own de novo review of the record. *Equicor Dev. v. Westfield–Washington Twp.*, 758 N.E.2d 34, 37 (Ind.2001). Where the trial court has conducted an evidentiary hearing, we defer to the trial court only to the extent the trial court's factual findings derived from the hearing. *Id.*

Here, the trial court did not hear testimony during the hearing. Rather, it based its decision on the paper record. Thus, our review is de novo.

In this case, Eliot testified before the Pension Board that his hearing loss became worse after exposure to sirens.[5] Eliot, however, testified that he was not going to tell the Pension Board that "the military played no part" in his hearing loss. (Marion County's App. 22). In letters presented to the Pension Board, doctors opined that exposure to noises common to Eliot's occupation could have caused his hearing loss; exposure to noise during Eliot's previous occupations, however, could not be ruled out as a contributing factor. Finally, the Pension Board heard evidence that there have been no "hearing loss retirements" since 1964. (Marion County's App. 33).

Given the evidence before the Pension Board, we cannot say that the Pension Board's denial of line-of-duty disability was "made without any consideration of the facts and in total disregard of the circumstances and lacks any basis which might lead a reasonable and honest person to make the same decision." *See Roberts,* 773 N.E.2d at 853. Furthermore, in referring to "the overwhelming and uncontested expert medical evidence presented in this case" and "the abundance of medical opinions," it is clear the trial court improperly reweighed the evidence and substituted its judgment for that of the Pension Board. *See City of Jasper v. Collignon,* 789 N.E.2d 80, 93 (Ind.Ct.App.2003) (finding the trial court reweighed the evidence where it focused on shortfalls in evidence and found evidence either "sufficient" or "insufficient"), *trans. denied.* Thus, we find that the Pension Board's denial of line-of-duty disability benefits to Eliot was not arbitrary and capricious. Accordingly, we reverse the trial court's judgment and remand with instructions for the trial court to affirm the Pension Board's determination.

Affirmed in part, reversed in part and remanded.

KIRSCH, J., and MATHIAS, J., concur.

---

5. As for the trial court's finding that "a shotgun was fired only a few feet away from" Eliot, the record does not support this.