## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 28 2015, 9:33 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Gregory F. Zoeller
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Edward J. Merchant
Ruckelshaus Kautzman Blackwell
Bemis & Hasbrook
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Indiana Law Enforcement
Training Board,

*Appellant-Respondent,*

v.

Theodore D. Comer, Sr.,

*Appellee-Petitioner*

January 28, 2015

Court of Appeals Cause No.
22A01-1407-MI-321

Appeal from the Floyd Circuit Court
The Honorable J. Terrence Cody,
Judge
Cause No. 22C01-1305-MI-777

**Crone, Judge.**

# Case Summary

[1] The Indiana Law Enforcement Training Board ("the Board") appeals a trial court judgment setting aside its revocation of Theodore D. Comer, Sr.'s certificate of completion of basic training ("certification") at the Indiana Law Enforcement Academy ("the Academy"). Finding that the Board's decision to revoke Comer's certification was arbitrary and capricious and was not supported by substantial evidence, we affirm the trial court.

# Facts and Procedural History

[2] In 2001, Comer enlisted in the U.S. Navy and served as an information systems technician third class petty officer in Iceland from 2002 through May 2005. During his time of service, he received various medals, ribbons, and letters of commendation. In 2004, he was disciplined for unauthorized absence when on one occasion he failed to return to his ship before it set sail for the next port. As a result, he received a demotion and a short-term pay reduction and restriction to the ship.

[3] After his discharge from the Navy in 2005, Comer worked as a correctional officer for the Department of Correction and then as a deputy with the Marion County Sheriff's Department. In January 2010, he was hired by the Indiana University Police Department ("IUPD") for its southeast campus in New Albany. As part of the hiring process, he disclosed that he had received an honorable discharge from the Navy on May 25, 2005. Also as part of the

process, IUPD conducted a character and background investigation as well as a polygraph, which he passed. IUPD determined that he was a person of good reputation and character and sent him to the Academy for basic training in March 2010. On his first day there, Comer filled out a personnel data sheet in which he listed his military discharge status as "honorable." He finished at the top of his training class and received his Academy certification in July 2010.

[4] In January 2011, Comer accepted a position with the Michigan City Police Department ("MCPD"). In the hiring process, he presented his May 25, 2005 discharge form. In December 2011, a domestic incident occurred at Comer's home, but no charges were filed. Comer returned to his job with IUPD in New Albany in January 2012. When Comer left MCPD, some MCPD officers began investigating him. Three months later, MCPD contacted the Board concerning alleged discrepancies in Comer's military discharge paperwork. The Board commenced an investigation, and IUPD Chief Charles Edelen informed Comer concerning a discrepancy in his military discharge status. The Board set a hearing and notified Comer that the hearing would be held to determine whether to revoke his Academy certification based on his military discharge status and lack of good character. The Board's executive director, Rusty K. Goodpaster, would serve as administrative law judge ("ALJ"), and the deputy director, Michael J. Lindsay, would serve as prosecutor.

[5] At the January 2013 hearing, two different Department of Defense discharge forms were presented: (1) a DD 214 dated May 25, 2005 ("May DD 214"), listing Comer's discharge as "honorable"; and (2) a DD 214 dated August 9,

2005 ("August DD 214"), listing Comer's discharge as "other than honorable." Petitioner's Exs. G, H. Comer's official Navy file contained the August DD 214 but not the May DD 214. The signature and initials on the May DD 214 were consistent with those affixed on all of the other documents in Comer's Navy file. The August DD 214 contained a signature and initials inconsistent with those affixed on all of his other Navy documents.

[6] The hearing exhibits include a summary of Comer's polygraph results as well as in-depth, question-by-question information. Comer also introduced a voucher and line of accounting form showing that the Navy had paid his moving expenses following his May 2005 discharge. Director John Lanzone of Navy Personnel Support Detachment testified telephonically that the Navy pays the expenses of moving household goods only for members receiving an honorable discharge. He also testified that he had examined Comer's May DD 214 listing his discharge as honorable and that it appeared to be "very authentic." Appellant's App. at 190. He explained that when a DD 214 discharge form needs to be updated or corrected after it has been issued to the discharged member, the proper procedure is to issue a DD 215. Nothing in Comer's Navy file indicates that a DD 215 was ever issued. Comer testified that following his June 2005 move back to Gary, Indiana, police arrested him based on a national crime database that indicated he had deserted his ship in May 2005. The Navy flew him to California to clear up the error. He testified that he never knew that there was any change in his discharge status, that he never saw or signed a second discharge form, and that he was unaware of the August DD 214's

existence until Chief Edelen informed him of it in April 2012. Immediately thereafter, he filed a petition with the Navy Discharge Review Board to correct his discharge status, which was still pending as of the date of the legal proceedings below.

[7] The ALJ issued an order revoking Comer's certification, concluding that it had been issued on the basis of information later determined to be false. The Board affirmed the ALJ's decision, and Comer filed a petition for judicial review. The trial court issued an order setting aside the revocation order, concluding that the Board's determination was arbitrary and capricious and unsupported by substantial evidence. The Board now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

[8] The Board maintains that the trial court erred in setting aside its order revoking Comer's Academy certification. When reviewing the decision of an administrative agency, we are bound by the same standard as the trial court. *Umbrella Family Waiver Servs., LLC v. Ind. Family & Soc. Servs. Admin.*, 7 N.E.3d 272, 274 (Ind. Ct. App. 2014). This standard of review is outlined in the Administrative Orders and Procedures Act ("AOPA") and prohibits the reviewing court from substituting its judgment for that of the agency. *Id.* at 274-75. Instead, the reviewing court considers the evidence in the light most favorable to the administrative proceedings and neither reweighs evidence nor assesses witness credibility. *Pendleton v. McCarty*, 747 N.E.2d 56, 61 (Ind. Ct.

App. 2001), *trans. denied*. The reviewing court shall grant relief only if it determines that the person seeking judicial relief has been prejudiced by an agency action that is:

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (2) contrary to constitutional right, power, privilege, or immunity;
>
> (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> (4) without observance of procedure required by law; or
>
> (5) unsupported by substantial evidence.

Ind. Code § 4-21.5-5-14(d).

[9] "An administrative act is arbitrary and capricious only where it is willful and unreasonable, without consideration and in disregard of the facts and circumstances of the case, or without some basis that would lead a reasonable and honest person to the same conclusion." *Terra Nova Dairy, LLC v. Wabash Cnty. Bd. of Zoning Appeals*, 890 N.E.2d 98, 104 (Ind. Ct. App. 2008) (citation omitted). The burden of demonstrating the invalidity of agency action is on the party seeking review of the action. *Id*. "Substantial evidence is such relevant evidence which a reasonable mind might accept as adequate to support the conclusion." *Roberts v. Cnty. of Allen*, 773 N.E.2d 850, 853 (Ind. Ct. App. 2002), *trans. denied*.

[10] In the interest of public safety and general welfare, the Indiana General Assembly established mandatory training for law enforcement officers and

created the Board to oversee and carry out the law pertaining to the training of such officers. Ind. Code §§ 5-2-1-1, -3. The Board contends that it revoked Comer's certification based on Indiana Code Section 5-2-1-12.5, which reads in pertinent part, "(a) The board may revoke a … certificate … showing compliance and qualification issued by the board for any of the following reasons: …. (3) The officer's … certificate … showing compliance and qualification was issued in error or was issued *on the basis of information later determined to be false*." (Emphasis added.) Specifically, the Board alleged that the "information later determined to be false" was Comer's assertion that he was honorably discharged from the Navy.

[11] Throughout the proceedings, Comer steadfastly maintained that he never knew that his discharge status had changed, that he did not sign the second form, and that he never knew it existed. He claimed that he did not learn of the inconsistency in his discharge status until April 2012, after which he immediately petitioned the Navy Discharge Review Board for a correction of military record. In support of his claim that he received an honorable discharge, Comer presented evidence that the Navy paid for his June 2005 move, which it would not have done if he had received an "other than

honorable" discharge.[1]  *See* Respondent's Ex. 2 (consisting of Department of Defense form for moving expenses and line of accounting from Navy showing issuance of reimbursement check dated March 29, 2006); *see also* Appellant's App. at 194 (testimony of Director Lanzone that Navy pays expenses of moving household goods only for personnel who receive an honorable discharge).

The Board correctly points out that because Indiana Code Section 5-2-1-12.5(a)(3) does not specifically require that the officer have knowledge of the falsity, it did not have the burden of establishing Comer's awareness of his "other than honorable" discharge.   Nonetheless, the ALJ found Comer not to be credible with respect to his claim of unawareness and concluded in part,

> Deserting the U.S. Navy once or twice; being caught by a Gary, Indiana police officer while AWOL from the U.S. Navy; and representing to his first police employer, [IUPD] – New Albany, then to his second employer, [MCPD] when hired and to the [Academy], as well when he  was admitted for basic training that he had a[n]

---

[1] The ALJ's findings emphasize a link between the classification of Comer's discharge and his alleged lack of good reputation and character.  250 Indiana Administrative Code 2-3-5 requires that every applicant for officer training "be of good reputation and character as determined *by a police department character and background investigation* on the applicant … ."  (Emphasis added.)  IUPD was the department that sent Comer to the Academy.  The record indicates that during the hiring process, IUPD conducted a background check on Comer that included a polygraph, which he passed, and made a determination that he was of good reputation and character.

honorable discharge (which was false), are all factors that individually and jointly *clearly demonstrate a lack of good reputation and character* at the time he applied for and received his [Academy] basic training certificate.

[14] Appellant's App. at 322 (emphasis added). The Board agreed and affirmed the ALJ's decision.

[15] The Board now submits that the trial court violated its standard of review in finding Comer to be credible concerning his alleged unawareness of any change in his discharge status. In its order setting aside the Board's decision, the trial court found in pertinent part,

> 3. On May 25, 2005, Petitioner was issued a Certificate of Release or Discharge From Active duty ("DD214") indicating an "Honorable Discharge. Petitioner signed the DD214. The DD214 contained a reserve obligation termination date of 2009 05 17. The Navy paid for the Petitioner to move his household goods, his vehicles and motorcycle, together with his wife's articles back to Gary, Indiana. The uncontroverted evidence was that the Navy would not pay for such travel expenses if a less than honorable discharge was received.

> 4. Petitioner was arrested for desertion by a Gary Police Officer on July 18, 2005.

> 5. Following Petitioner's arrest, the Navy flew Petitioner back to California to face the desertion charge. An administrative hearing was held. Petitioner was not court martialed. Petitioner was ultimately separated from the U.S. Navy with no reserve obligation.

> 6. According to military records but unbeknownst to Petitioner another DD214 was issued on August 9, 2005 indicating that he had received an "Other Than Honorable Discharge."

…

10. Prior to being hired by the IUPD, Petitioner successfully passed a background investigation. As part of the background investigation, Petitioner successfully completed a polygraph examination.

…

22. Petitioner testified at the hearing that the signature and the initials on the DD214 indicating "Other than Honorable Discharge" were not his.

…

24. Petitioner's discharge characterization of "Other than Honorable" is disputed and the subject of an application to the Board of Correction for Military Records and the Discharge Review Board. [The Board] became aware of such application on or about June 27, 2012.

25. The uncontroverted evidence was that Petitioner signed and initialed the DD214 issued on May 25, 2005 and that it was his genuine signature and initials. The signature on the DD214 indicating an "Other than Honorable Discharge" is not consistent with other records maintained in Petitioner's Navy Personnel file.

*Id.* at 54-55, 57.

The trial court concluded in part as follows:

A. There is substantial evidence in the record that would support the ALJ's conclusion that Petitioner's official U.S. Navy military discharge status is "other than honorable" based on the DD214 issued on August 9, 2005, however, this "other than honorable["] discharge is being disputed and is the subject of an application by the Petitioner with the Board of Correction for Military Records and the Discharge

Review Board. Until there is a decision by the Review Board, the use of the "other than honorable" discharge in and of itself, does not provide an adequate basis for revoking Petitioner's certification under I.C. 5-2-1-12.5(a).

….

F. There is not substantial evidence in the record to support [t]he findings and conclusions of the ALJ that Petitioner misrepresented or gave false information concerning his discharge status from the United States Navy at the time of his application and hiring by IPUD [sic], his admission and graduation from the Academy and his application and hiring by MCPD.

G. In analyzing the Record as a whole, the decision of the [Board] to revoke Petitioner's certificate is not supported by substantial evidence.

H. The decision of the [Board] to revoke Petitioner's certificate is arbitrary and capricious in that it was made without consideration or in disregard to the facts and circumstances of the case regarding Petitioner's knowledge of his discharge status at the time he applied and was hired by IUPD, attended and graduated from the Academy and at the time he applied and was hired by MCPD in not holding in abeyance a decision until such time as Petitioner's discharge status was finally determined by the Board of Correction for Military Records and the Discharge Review Board.

*Id*. 65-67.

[16]     The Board asserts that the trial court improperly substituted its judgment for the ALJ's and did not defer to the expertise of the administrative agency.

Where the matter lies within the particular expertise of the administrative agency, we afford the finding a greater level of deference. Where the matter does not lie within the particular expertise of the agency, however, the reviewing court is more likely to

exercise its own judgment. Regardless, the court examines the logic of the inference drawn and imposes any rules of law that may drive the result. The Board's conclusion must be reversed if the underlying facts are not supported by substantial evidence or the logic of the inference is faulty, even where the agency acts within its expertise, or if the agency proceeds under an incorrect view of the law.

*Chrysler Grp., LLC v. Review Bd. of Ind. Dep't of Workforce Dev.*, 960 N.E.2d 118, 122-23 (Ind. 2012).

[17] Here, the pivotal issue concerns the status of Comer's military discharge, which is a matter within the expertise of the Department of Defense, not the state law enforcement training board. At the time of the trial court's order, Comer's petition to correct his discharge classification was still pending before the body most suited to resolve it – the Navy Discharge Review Board.[2]

[18] At the ALJ hearing, Director Lanzone testified telephonically concerning Department of Defense procedures surrounding discharges. He explained that where a DD 214 discharge form has already been issued to the discharged member, a change in discharge status would be accomplished by issuing a DD

[2] In this vein, we also note the frequent use of the term "desertion" in the briefs and in the findings. The military has specific definitions for terms such as "desertion," "AWOL," and "unauthorized absence," and these designations carry vastly different consequences. Because these are matters within the expertise of the military, we advise the parties and the tribunals below to exercise caution in using these terms without also including their specific military definitions.

215 form to correct or update the original DD 214. Comer's official Department of Defense record does not include a DD 215 form. Director Lanzone also testified that he had reviewed Comer's May DD 214 indicating an honorable discharge and concluded that it appears to be "very authentic, it does not look to be forged at all." Appellant's App. at 190. Moreover, he testified that Comer's signature and initials on the May DD 214 matched those contained in all of Comer's other naval records. When asked to explain what might account for the inconsistent signature and initials contained on the August DD 214, Director Lanzone posited that when such a discrepancy exists, it could be attributable either to the discharged sailor intentionally signing the form differently in the hope of later challenging its authenticity or to the records clerk having failed to obtain the required signature and initials from the sailor and signing the form himself. He did not render a professional opinion as to what occurred in Comer's case, and any attempt to characterize his testimony as such would be a misrepresentation of the record.

[19] In sum, the ALJ's decision to revoke Comer's Academy certification was based on the status of his discharge from the Navy. At the time of the Board's decision, Comer's petition to correct his military record was pending with the Navy Discharge Review Board. As such, the truth or falsity of Comer's assertion of an honorable discharge had not been determined. In other words, the character of Comer's discharge is a question with a definite answer which should be provided by the body with expertise and access to the information.

[20] Even if the Navy Discharge Review Board determines that Comer's correct discharge status is "other than honorable," such status would not by itself constitute grounds for revocation of his certification. The administrative regulations disqualify from the Academy only applicants whose discharge status is "dishonorable." *See* 250 Ind. Admin. Code 2-3-8 ("A dishonorable discharge from military service shall disqualify the applicant, and a discharge other than honorable *may* be grounds for rejection in accordance with other standards in this rule.") (Emphasis added.) Here, Comer's true discharge status is either "honorable" or "other than honorable." Even assuming that it is "other than honorable," he nonetheless could have been admitted to the Academy. Thus, it cannot be said that his certification was issued *on the basis of* his "honorable" discharge. Based on the foregoing, we affirm the trial court's decision to set aside the revocation of Comer's certification.

[21] Affirmed.

Friedlander, J., and Kirsch, J., concur.