LAMAR ADVERTISING, INC., Appellant-Defendant,
v.
VIEW OUTDOOR ADVERTISING, LLC, Appellee-Plaintiff, and
STATE OF INDIANA, DEPARTMENT OF TRANPORTATION, Respondent.
No. 49A05-0904-CV-217.
Court of Appeals of Indiana.
January 29, 2010.
MICHAEL RABINOWITCH, MAUREEN E. WARD, Wooden & McLaughlin LLP, Indianapolis, Indiana, ATTORNEY FOR APPELLANT.
ZEFF A WEISS, ABIGAIL B. CELLA, Ice Miller LLP, Indianapolis, Indiana, ATTORNEY FOR APPELLEE.

NOT FOR PUBLICATION

MEMORANDUM DECISION
BARNES, Judge.

Case Summary
Lamar Advertising, Inc., ("Lamar") appeals the trial court's granting of a petition for judicial review filed by View Outdoor Advertising, LLC, ("View"). View also challenges some aspects of the trial court's order. We affirm in part, reverse in part, and remand.

Issues
Lamar raises three issues, and View raises an additional four issues. We address five issues, which we restate as:
I. whether the Indiana Department of Transportation ("INDOT") properly denied View's application for a permit to construct a billboard;
II. whether INDOT properly granted Lamar's application for a permit to construct a billboard;
III. whether INDOT is estopped from revoking Lamar's permit;
IV. whether Lamar's permit should be revoked because of alleged misrepresentations; and
V. whether the trial court ordered the proper remedy.

Facts
Prior to 2006, Lamar, an outdoor advertising company, leased property near U.S. 30 in Hobart from Thomas O'Connor. A properly permitted billboard was located on this property. Lamar's lease with O'Connor was scheduled to end on November 30, 2006. Lamar had a "reasonable time after expiration" of the lease to remove the billboard. Lamar's Appendix p. 267. Lamar and O'Connor were unable to successfully renegotiate the lease. In the fall of 2006, O'Connor entered into lease negotiations with View, another outdoor advertising company, and Lamar began negotiating with a neighboring property owner, Lake County Trust ("Trust"), to lease Trust's property.
On October 31, 2006, View filed an electronic application with INDOT for the construction of a billboard on the O'Connor property where the Lamar billboard was located. In a message submitted with the application, View stated, "There is a current sign on the property and the lease is expired. We are leasing the property and putting up our sign in the place of the current sign." Id. at 253. On November 3, 2006, an investigator for the LaPorte District of INDOT examined the site where View wanted to construct the billboard and noted, "There is an existing sign in location Lamar plate # L03104." Id. at 254. An INDOT official later explained that the construction of a billboard by View in the same location as the Lamar billboard would violate 105 IAC § 7-3-10(a)(1)(A), which prohibits the erection of a sign structure within 500 feet of another structure on the same side of the highway. See id. at 223.
Also on November 3, 2006, Lamar filed an application with INDOT seeking to relocate its billboard 130 feet from the O'Connor property to the Trust property. On November 8, 2006, an investigator for the LaPorte District of INDOT reviewed Lamar's application. On November 30, 2006, INDOT informed Lamar that its application was approved. On December 4, 2006, INDOT issued Lamar a billboard permit. On January 9, 2007, INDOT informed View of its decision to deny View's application.
While the INDOT applications were being processed, both parties sought variances from the City of Hobart Board of Zoning Appeals ("BZA") to construct billboards that were inconsistent with the City of Hobart Zoning Ordinance ("Zoning Ordinance"). On January 11, 2007, the BZA conducted a hearing at which the parties' petitions were addressed. At the hearing, View indicated its intention to appeal INDOT's denial of its application. View's petition for a conditional use variance was tabled pending the outcome of its appeal.[1] Lamar's petition for a conditional use variance for the relocated billboard was approved, and its petition for a developmental standards variance was approved to permit Lamar to construct a sixty-foot high billboard, but the BZA limited the square footage of the billboard to 600 square feet.
On January 11, 2007, the same day as the BZA hearing, View sought administrative review of INDOT's denial of its application. On January 26, 2007, Lamar removed its old billboard from O'Connor's property. On February 21, 2007, Lamar reused some of the parts from the old billboard and constructed a new billboard on the Trust property. On April 13, 2007, Lamar sought to intervene in View's petition for judicial review. On April 17, 2007, the Administrative Law Judge ("ALJ") allowed Lamar to intervene. On May 18, 2007, the ALJ held a hearing on View's petition for administrative review. On October 16, 2007, the ALJ issued a non-binding recommendation to INDOT. The ALJ recommended that INDOT:
a. "Revoke Lamar's permit No. L06026 and allow the parties to apply for a permit on the old location following the removal of Lamar's sign from the new location," or
b. "Revoke Lamar's permit No. L06026 and reverse the denial of View's application that is the subject of its appeal."
Lamar's App. p. 38.
Both parties objected to the ALJ's decision and the INDOT Commissioner ("Commissioner") ordered the parties to fully brief the issues. On April 18, 2008, the Commissioner issued his decision. In his decision, the Commissioner noted:
View alleges that it submitted the application based on the fact that the lease Lamar had with the underlying landowner was due to expire. Although View would like INDOT to consider such leases as part of its application procedure, INDOT's procedures have never required this and INDOT's permit section is ill-equipped to engage in a legal analysis of the terms of leases to which the State of Indiana is not a party. INDOT, therefore, declines such review.
Id. at 37. The Commissioner concluded that INDOT correctly denied View's application because, upon investigation, INDOT confirmed that Lamar's old billboard was still in place and that the granting of View's application would violate the 500-foot rule. See 105 IAC § 7-3-10(a)(1)(A). The Commissioner also concluded that INDOT incorrectly granted Lamar's application. The Commissioner reasoned that the same distance limitation that prevented View from receiving a permit also should have prevented Lamar from receiving a permit.[2] The Commissioner, however, did not require Lamar to remove its new billboard because Lamar detrimentally relied on the permit. The Commissioner also explained that View was not entitled to a permit because of an August 2007 change in the Zoning Ordinance.
On May 15, 2008, View petitioned for judicial review of the Commissioner's decision. After hearing arguments, the trial court determined that INDOT gave priority to View's application when it considered View's application first. See 105 IAC § 7-3-2(e) ("When multiple permit applications are received for proposed sign structures, priority shall be given in the order received."). The trial court then concluded that INDOT correctly denied View's application based on the 500-foot rule. The trial court also acknowledged that INDOT had created an "unwritten relocation policy" in which INDOT issues a permit to an applicant who has an existing sign within 500 feet of the proposed location with the understanding that the existing sign will be removed before the new sign is constructed. Lamar's App. p. 23. Like the Commissioner, the trial court held:
At the time of both View's and Lamar's applications, the proposed signed [sic] violated the sign spacing criteria because the original Lamar sign was still standing. INDOT could have denied permits to both View and Lamar until the original Lamar sign was removed. If INDOT had done so, its denial of View's application would be proper. Instead, INDOT approved the second application (Lamar's) based on the applicant's stated intention to remove the existing sign.
Id. at 24. The trial court concluded, however, that the Commissioner should not have applied the doctrine of equitable estoppel or interpreted the amended Zoning Ordinance under these circumstances. After deciding that the Commissioner's order was arbitrary and capricious, an abuse of discretion, unsupported by the evidence, and in excess of statutory authority, the trial court affirmed the recommendations of the ALJ.
View filed a motion to correct error, which the trial court denied, and Lamar filed a notice of appeal. During briefing, INDOT filed a notice stating:
INDOT will not be filing a Brief of Appellee in this matter. INDOT does not disagree with the decision of the trial court that is currently the subject of this appeal. Specifically, the trial court's order did not aggrieve INDOT. Thus, INDOT has no present interest in pursuing any appeal, but is instead waiting for the Court's decision as to who gets the permit, if anyone, and for the dissolution of the stay of the trial court's decision. INDOT, however, will prepare and file a Brief of Appellee should this Court so request.
INDOT's position in this notice is contrary to its position before the trial court. Lamar and View both challenge the trial court's order on appeal.

Analysis
In reviewing a decision of an administrative agency, we stand in the same position as the trial court reviewing the agency's decision. Filter Specialists, Inc. v. Brooks, 906 N.E.2d 835, 844 (Ind. 2009). A reviewing court shall grant relief only if it determines that a person seeking judicial relief has been prejudiced by an agency action that is:
(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(2) contrary to constitutional right, power, privilege, or immunity;
(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
(4) without observance of procedure required by law; or
(5) unsupported by substantial evidence.
Ind. Code § 4-21.5-5-14(d). In sum, our review of an agency's decision "`is limited to consideration of (1) whether there is substantial evidence to support the agency's finding and order and (2) whether the action constitutes an abuse of discretion, is arbitrary, capricious, or in excess of statutory authority.'" Filter Specialists, 906 N.E.2d at 844 (citations omitted). "In reviewing an administrative decision, a court is not to try the facts de novo or substitute its own judgment for that of the agency." Equicor Dev., Inc. v. Westfield-Washington Twp. Plan Comm'n, 758 N.E.2d 34, 37 (Ind. 2001).
Although both parties contest various aspects of the trial court's order, we are mindful that we are essentially reviewing the Commissioner's order de novo. It is well-settled that judicial review, by both the trial court and this court, of an administrative decision is limited. Anderson v. Eliot, 868 N.E.2d 23, 30 (Ind. Ct. App. 2007), trans. denied. Where, as here, the trial court's factual findings were based on a paper record, we shall conduct our own de novo review of the record.[3] Id. at 31. Further, we apply de novo review to questions of law and, therefore, owe no deference to the trial court on such inquiries. Dev. Serv. Alternatives, Inc. v. Indiana Family and Social Serv. Admin., 915 N.E.2d 169, 178 (Ind. Ct. App. 2009) (observing that appellant's complaints regarding trial court's conclusions of law have no effect on our review of ALJ's order), trans. pending.

I. Denial of View's Application
We first address View's arguments that INDOT improperly denied its application. At the time View applied for its permit, Lamar's old billboard was still in place. Even if View's application was premised on the termination of O'Connor's lease with Lamar and the removal of the old Lamar billboard, it was within INDOT's discretion to deny View's application based on 105 IAC § 7-3-10(a)(1)(A), which prohibits the erection of a sign structure within 500 feet of another sign structure on the same side of the highway. The Commissioner concluded:
INDOT was not required to make a decision on View's application based upon the potential occurrence of Lamar's lease expiring sometime in the future. It was only required to make a decision based upon the conditions that existed in the field at the time of the application. Because Lamar's sign was currently standing at the location where View wished to locate its sign, INDOT correctly determined that a denial was proper in this case, due to a violation of the spacing requirement contained in 105 IAC § 7-3-10.
Lamar's App. p. 40.
The interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless the agency's interpretation would be inconsistent with the statute itself. Pierce v. State Dept. of Correction, 885 N.E.2d 77, 89 (Ind. Ct. App. 2008). When faced with two reasonable interpretations of a statute, one of which is supplied by an administrative agency charged with enforcing the statute, we should defer to the agency. Id. It was reasonable for INDOT to consider the circumstances as they were at the time of the application, and we defer to INDOT's interpretation.

II. Granting of Lamar's Application
Lamar argues that INDOT properly issued Lamar's permit as an exercise of its discretion to interpret 105 IAC § 7-3-10(a)(1)(A). Specifically, Lamar claims, "INDOT is empowered by the legislature to interpret and enforce its regulations, INDOT's decision is entitled to great weight, and the trial court erred by failing to accord INDOT's decision the weight to which it is entitled." Lamar's Br. p. 12.
Lamar's argument appears to be based on the initial decision of INDOT to issue the permit to Lamar. This assertion does not acknowledge the Commissioner's order concluding that INDOT incorrectly granted Lamar's application. Specifically, the Commissioner stated, "In this case, the same distance limitation which prevented View from receiving a permit for Lamar's old locationthe fact that Lamar already had a sign in place within 500 feet of the proposed locationalso should have prevented LAMAR from receiving a permit for its proposed location." Lamar's App. p. 41. Further, in its brief to the trial court in support of the Commissioner's decision, INDOT stated, "View may and in fact does allege that INDOT granted Lamar its permit erroneously, a point which INDOT has admitted." Id. at 98. At the hearing before the trial court, an attorney for the State acknowledged:
The State has admitted, through its Commissioner at INDOT that the granting of the permit to Lamar was erroneous. Because they did not hold Lamar to the same standard as they did, in fact, hold to View. . . . In the case of Lamar, they should have been held to the same standard of review, whether there's a billboard on that property or not. They were not held to that same standard and INDOT freely admits that. . . . Both permits should have been denied on the same grounds, that there was already a billboard on that property.
Tr. pp. 12-13. It is clear that INDOT believes it incorrectly initially issued a permit to Lamar.
Without a specific argument from Lamar as to why we should be deferential to INDOT's initial decision as opposed to the Commissioner's decision, we decline do so. Although we must be deferential to an agency's interpretations of its own regulations, we need not be deferential to an initial determination that the commissioner of an agency later determines was erroneous. In giving due deference to the Commissioner's order, we conclude that INDOT improperly issued a permit to Lamar.[4] Because Lamar already had a sign within 500 feet of the proposed location Lamar's application, like View's, should have been denied.

III. Equitable Estoppel
Although the Commissioner concluded that Lamar was improperly issued a permit, he held, "INDOT finds that Lamar, relying in good faith upon INDOT's decision to grant its application and issue a permit, did commit itself to a `substantial disadvantage' prior to the change in the zoning ordinance and expense in erecting its current sign." Lamar's App. p. 43. In reviewing the Commissioner's decision, the trial court held, "INDOT Commissioner's use of the Doctrine of Estoppel based on detrimental reliance was not authorized and is unsupported by substantial evidence from the agency record." Id. at 26. The trial court also concluded that the Commissioner's decision was based on an unwritten relocation policy and, accordingly, that the "Commissioner lacked jurisdiction to conclude that Lamar detrimentally relied on the actions of INDOT." Id. at 27. On appeal, Lamar argues that the Commissioner had the power to invoke equitable relief and that there is substantial evidence to support the application of equitable estoppel.
The Commissioner's "detrimental reliance" holding stems from an opinion of our supreme court relating to vested rights and changes in zoning ordinances. See Metro. Dev. Comm'n of Marion County v. Pinnacle Media, LLC, 836 N.E.2d 422, 425-36 (Ind. 2005). In Pinnacle, our supreme court observed:
As a general proposition, the courts have been willing to hold that the developer acquires a "vested right" such that a new ordinance does not apply retroactively if, but only if, the developer "(1) relying in good faith, (2) upon some act or omission of the government, (3) . . . has made substantial changes or otherwise committed himself to his substantial disadvantage prior to a zoning change."
Id. (ellipsis in original) (citations omitted). This case is not applicable to the question before us today because we are not directly confronted with the retroactive application of a zoning change.[5]
Further, to establish a claim of equitable estoppel, Lamar was required to show it (1) lacked knowledge and the means of knowledge as to the facts in question, (2) it relied upon the conduct of the party estopped, and (3) it acted based thereon of such a character as to change its position prejudicially. See U.S. Outdoor Adver. Co. v. Indiana Dep't. of Transp., 714 N.E.2d 1244, 1259-60 (Ind. Ct. App. 1999), trans. denied. "The party claiming estoppel has the burden to show all facts necessary to establish it." Story Bed & Breakfast, LLP v. Brown County Area Plan Comm'n, 819 N.E.2d 55, 67 (Ind. 2004). "Equitable estoppel cannot ordinarily be applied against government entities, although its application is not absolutely prohibited." U.S. Outdoor Adver., 714 N.E.2d at 1260. Our courts have been hesitant to allow estoppel in cases where the party claiming to have been ignorant of the facts had access to the correct information. Id. "Moreover, courts are reluctant to apply equitable estoppel unless it is in the public interest to do so." Id. "All persons are charged with the knowledge of the rights and remedies prescribed by statute." Middleton Motors, Inc. v. Indiana Dept. of State Revenue, 269 Ind. 282, 285, 380 N.E.2d 79, 81 (1978).
Even assuming that administrative agencies are authorized to apply the doctrine of equitable estoppel, INDOT may not estop itself from revoking Lamar's permit. First, Lamar did not raise the issue of equitable estoppel during the administrative proceedings. The issue was raised sua sponte by the Commissioner. Moreover, there is not substantial evidence in the record, especially the limited record on appeal, to establish a claim of estoppel.
Lamar argues that it could not have known INDOT would revoke its permit. At issue is a letter from View to Lamar dated January 11, 2007, in which View advised Lamar indicated that it would appeal the January 9, 2007 denial of its application. In the letter, View stated:
View Outdoor expects to prevail on its appeal, and would not want Lamar to incur any unnecessary losses and/or expenses relocating and/or constructing an outdoor sign with respect to the property located on US 30 in Lake County. In other words, if View Outdoor is successful on its appeal, the end result is the denial of Lamar's competing sign permit.
Lamar's App. p. 70. Lamar argues that because this letter was not included in the administrative record, it should not have been considered by the trial court. Without citation, Lamar urges us to strike this letter from the record.
We will not do so. Because the Commissioner raised the doctrine of estoppel sua sponte, View was not given an opportunity to create an administrative record on this point. Further, estoppel is an equitable doctrine intended to right a wrong. See In re Bender, 844 N.E.2d 170, 184 (Ind. Ct. App. 2006) ("The doctrine of estoppel springs from equitable principles, and it is designed to aid in the administration of justice where, without its aid, injustice might result."), trans. denied. Given the procedural posture of this case and these specific facts, if Lamar was given notice of View's appeal of the denial of its application, Lamar should not now be permitted to avoid the legal implications of such knowledge.
Even if we do not consider this letter, the minutes of the January 11, 2007 BZA hearing indicate that the BZA discussed View's petition for a conditional use permit, View's intention to appeal INDOT's denial of its application, and View's request that the "opposing petition" be tabled during the appeal process. Lamar's App. p. 262. Based on the minutes from the same meeting, it appears that an attorney for Lamar was present at the meeting and sought approval of its petition for conditional use variance and petition for developmental standards variance. Based on the evidence in the record, we cannot conclude that Lamar established it was without knowledge of View's appeal.
Lamar deconstructed the old billboard and built the new billboard before intervening in View's appeal in April 2007. Although Lamar could not know the outcome of View's appeal, it knew reversal was a possibility and nevertheless proceeded with the construction of the new billboard. Lamar acted at its own peril when it constructed the new billboard during the pendency of View's appeal, and Lamar is not entitled to equitable relief.
Lamar claims this conclusion jeopardizes all valid permits issued by INDOT and "is not the law." Lamar's Br. p. 19. We disagree. The time for seeking administrative of review is finitethe notice of an appeal must be filed within thirty days of the receipt of INDOT's determination. See Lamar's App. p. 143. The opportunity to challenge the validity of permits does not linger indefinitely.[6]

IV. Alleged Misrepresentations by Lamar
As an alternative basis for revoking Lamar's permit, View argues that Lamar made material misrepresentations in its permit application. The Outdoor Advertising Control Manual issued by INDOT allows for the revocation of any permit for "[m]isrepresentations of material facts by the applicant for the outdoor advertising permit." Lamar's App. pp. 140-41. View contends that Lamar misrepresented its status of the lease with the Trust and its intention to relocate the old billboard.
In his order, the Commissioner stated, "the record herein contains no evidence of any error, false statement, omission or any set of facts in Lamar's application for the permit it now holds and currently relies on for its existing sign that would have caused INDOT to deny the permit." Id. at 43. Although Lamar had not executed a written lease with the Trust when it applied for the permit and the billboard it constructed was different from the one described in the application, View cannot point to an intentional misrepresentation by Lamar. Without more, we must defer to the Commissioner's finding of fact. We decline View's request to reweigh the evidence.

V. Remedy[7]
The ALJ recommended that INDOT revoke Lamar's permit and allow the parties to reapply following the removal of Lamar's billboard from the new location or that INDOT revoke Lamar's permit and reverse the denial of View's application. The trial court adopted these recommendations. On appeal, INDOT states that it agrees with the trial court's decision, but does not specify which remedy is appropriate.
We first consider the revocation of Lamar's permit and the granting of View's application. This approach ignores the Commissioner's conclusion that both permits should have been denied based on the 500-foot rulenot that View's should have been granted. It was INDOT's prerogative to determine that both of the 2006 applications should have been denied until the old Lamar billboard was actually removed, and we may not second guess this reasonable interpretation.
The other option is to revoke Lamar's permit, require Lamar to remove its billboard, and then allow the parties to apply for new permits. This option, too, is flawed. It would be unnecessarily wasteful to require Lamar to remove its billboard if Lamar is eventually issued the new permit and allowed to construct the same billboard. On the other hand, if Lamar is not required to remove its billboard before the parties submit their new applications, both applications would have to be denied because the granting of either one would violate of the 500-foot rule. To avoid this problem, we instruct INDOT to allow the parties to file new applications and to make the determination as to who, if anyone, shall receive the permit as if the new Lamar sign does not exist. We acknowledge this solution is not ideal; nevertheless, we must attempt to provide the parties with a workable resolution to a case laden with errors in judgment and complications.
Further, in determining who should be awarded the permit, INDOT shall consider 105 IAC 7-3-2(e), which provides, "When multiple permit applications are received for proposed sign structures, priority shall be given in the order received." INDOT does not provide us with an interpretation of 105 IAC 7-3-2(e) on appeal. It is our opinion that this rule requires INDOT to grant the first application it receives that comports with the relevant INDOT regulations. Said another way, we do not believe that INDOT must automatically grant the first application it receives, but we do believe that INDOT must grant the first valid application it receives. Further, it is for INDOT, not us, to determine whether an application is valid based on the facts of each case.[8]

Conclusion
The Commissioner properly applied the 500-foot rule and determined that neither View nor Lamar was entitled to a permit. However, there is not substantial evidence to support the Commissioner's decision that INDOT is equitably estopped from revoking Lamar's permit, and we will not reweigh the evidence concerning View's allegations that Lamar made material misrepresentations in its application. Regarding the appropriate remedy, the parties may apply for a new permit, and INDOT may issue or deny permits as it sees fit. Despite the violation of the 500-foot rule that will be created during the permitting process, Lamar need not remove its billboard unless its application is denied. We affirm in part, reverse in part, and remand.[9]
Affirmed in part, reversed in part, and remanded.
NAJAM, J., and KIRSCH, J., concur.
NOTES
[1] On September 13, 2007, the BZA denied View's application for a conditional use variance.
[2] According to the Commissioner's order, INDOT has clarified:

In the future, INDOT will not accept any application for a proposed relocation until the permit applicant can show INDOT that no existing sign is within 500 feet of the proposed sign. Future applicants also must show INDOT that a permitted sign has been removed before applying for a new permit to relocate the sign.
Id. at 36.
[3] Although neither party included the ALJ's non-binding order its appendix, these options were referenced in the Commissioner's order. Further, in its order, the trial court mentions a three volume 579-page administrative agency record. This agency record was not included in the record on appeal or in either party's appendix. We are left to determine whether the parties met their respective burdens of proof based on the evidence they have submitted to us. See Board of Comm'rs of LaPorte County v. Great Lakes Transfer, LLC, 888 N.E.2d 784, 789 (Ind. Ct. App. 2008) ("The challenging party has the burden of proving that they are entitled to relief from an administrative action.").
[4] Because the Commissioner has already determined that INDOT's initial issuance of a permit to Lamar was improper, it effectively rejected an unwritten relocation policy applied by the LaPorte District. Thus, it is unnecessary for us to address the propriety of INDOT's so called unwritten relocation policy on appeal.
[5] Although the City of Hobart amended its Zoning Ordinance in 2007, the question before us concerns INDOT's denial and issuance of permits, not which zoning ordinance applies.
[6] Although Lamar hints that INDOT denied View's permit in November 2006, it is agreed that INDOT sent notice of the denial to View on January 9, 2007.
[7] Neither party argues that 105 IAC 7-3-7 is applicable to this case. This rule provides:

A conditional permit shall be granted to any sign lawfully erected that is not eligible for a permit under section 6 of this rule (105 IAC 7-3-6), provided the following:
(1) The sign must remain substantially the same as it was on the date that its status initially became nonconforming. Reasonable maintenance and repair shall not be considered to have substantially altered the sign.
(2) The sign has not been destroyed, abandoned, or discontinued. If reerected in kind, signs destroyed due to vandalism, criminal acts, or tortious acts shall not be considered destroyed.
105 IAC 7-3-7.
[8] Lamar also argues that the Commissioner properly analyzed the amended Zoning Ordinance. Without citation to authority, Lamar claims that allowing the Commissioner to apply the Zoning Ordinance is an efficient use of government resources. Without more, we cannot agree that the Commissioner is authorized to interpret and apply all Indiana zoning ordinances and statues. It is for the BZA to determine and apply the applicable Zoning Ordinance. We make no determination regarding the permissibility of any billboard under either Zoning Ordinance.
[9] As a reminder, the trial court, administrative agency, and the parties shall not take any action in reliance upon this decision until it is certified. See Indiana Appellate Rule 65(E).